# IN THE SUPREME COURT OF IOWA

No. 13–0506

Filed October 18, 2013

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JAMES A. CLARITY III,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed ethical violations and recommends suspension of his license to practice law. **LICENSE SUSPENDED.**

Charles L. Harrington and Nicholas Trè Critelli III, Des Moines, for complainant.

Edward W. Bjornstad of Edward W. Bjornstad, LLC, Spirit Lake, for respondent.

**WATERMAN, Justice.**

An experienced Iowa attorney, James A. Clarity III, neglected his clients and mishandled their cases and money while struggling with alcoholism. He has been under disability suspension since May 25, 2012. The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Clarity, alleging he violated ten rules of professional conduct during his representation of seven clients in five different matters. Clarity stipulated to most of the underlying facts, nine of ten rule violations, and mitigating and aggravating circumstances. He contested the Board's allegation that he charged an unreasonable fee in a criminal case. A division of the Grievance Commission of the Supreme Court of Iowa found Clarity violated all ten rules and recommended his license be suspended for three years from May 25, 2012. Based on our de novo review, we find Clarity violated all ten rules and impose a one-year disciplinary suspension from the date of this opinion.

## I. Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 171 (Iowa 2013). We give the commission's findings respectful consideration, but we are not bound by them. *Id.* The Board must prove attorney misconduct by a convincing preponderance of the evidence. *Id.* In determining the appropriate sanction, we can impose a more or less severe sanction than that recommended by the commission. *Id.*

The parties are bound by their stipulations of fact. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012). "However, a stipulation is not binding as to a violation or a sanction. We will determine whether a violation occurred and the appropriate sanction

based upon the facts we find from the stipulation and our review of the record." *Id.* (citations omitted).

## II. Background Facts and Proceedings.

We find the following facts using the parties' stipulation and our own review of the record.

Clarity was admitted to practice law in Iowa in 1976. At all times relevant to the Board's complaint, Clarity resided in Dickinson County, Iowa. His practice was approximately forty percent criminal matters and sixty percent civil matters. Before his issues with alcoholism, Clarity had an unblemished career and enjoyed a reputation as a zealous advocate for his clients. He was a member of several prestigious trial lawyer organizations.

Clarity, by his own admission, became an alcoholic after his sister died in 2009. He received inpatient treatment for alcohol abuse from July 15 through August 13, 2010, at the Hazelden Treatment Center in Center City, Minnesota. After relapsing, Clarity entered inpatient treatment a second time on February 12, 2011. During this second phase of treatment, on March 8, our court temporarily suspended Clarity's license to practice law due to his disability and implemented a trusteeship. He was released from inpatient care on April 14. We held a hearing on April 26 on whether to lift his disability suspension. Clarity provided medical evidence of his successful treatment. He testified as follows:

> I am asking the court to end this suspension so that I can go back to what I love doing. I have taken the necessary steps to put my life in order as would a cancer patient, patient with MS or any other patient with a treatment of a disease. Alcoholism is chronic, progressive, and it's fatal. To that and in that there is no doubt. If I drink again, I will die. Simple.

We lifted his temporary suspension the next day.

Clarity relapsed again a year later. On May 25, 2012, we imposed another temporary disability suspension on Clarity's license to practice law. Clarity consented to continuing this suspension, and it has remained in effect since that date. We now describe the matters giving rise to the Board's complaint.

**A. Easton Representation.** David and Jane Easton retained Clarity on January 20, 2010, to represent them in threatened federal criminal and civil charges relating to Medicare prescription fraud. The Eastons paid Clarity a $75,000 retainer and agreed to pay his hourly rate of $300. Clarity had previously handled similar matters. Shortly after retaining Clarity, David was indicted in federal court on 1080 criminal counts, and a federal civil suit was filed against the Eastons.

The Eastons paid Clarity's retainer in two installments: $50,000 on January 21 and $25,000 on February 10. Clarity deposited these funds in his trust account at The State Bank in Spirit Lake, Iowa. At the time these funds were deposited, the account contained no other client funds and had a prior balance of $118.93. Over the next several months, Clarity transferred $69,317.08 to his general firm account for the payment of legal fees and costs and paid the balance to a third party for chartered air travel. Clarity failed to contemporaneously notify the Eastons of these withdrawals or provide them with any accounting. By May 3, their retainer was depleted, leaving $119.93 in the trust account.

Clarity contacted David on July 14 to notify him for the first time that the $75,000 was depleted. Clarity asked for an additional $15,000 to continue his work on the case. Clarity told David he needed the funds to travel to Washington, D.C. so that he could negotiate a settlement with the United States Department of Justice. At Clarity's request, David met him in a grocery store parking lot and gave him a check for the requested

amount. The next day, July 15, David went to Clarity's law office to obtain a receipt, but was informed by Clarity's secretary that he was home sick and that she knew nothing about the $15,000. David heard rumors the next day that Clarity had been committed for alcohol addiction and stopped payment on his check. No one from Clarity's office notified the Eastons that Clarity would be unavailable for weeks. The Eastons retained new counsel, who required them to pay another retainer. Clarity's office did not respond to multiple requests to transfer his file to the new attorney until mid-August. Clarity, despite repeated requests for a refund or explanation, also failed to provide any accounting of how the $75,000 was spent until after the Eastons filed a complaint with the Board on November 5. On November 12, Clarity sent to the Eastons his first and only statement describing his services rendered from January through June.

According to Clarity, due to record-keeping problems, he had to re-create his November statement by perusing his file. He said he originally handwrote his time entries during his representation of the Eastons and his legal assistant entered the information into the billing system. She destroyed the handwritten time entries after entering the data.[1] Clarity testified a computer virus compromised the electronic time records. Clarity hired a computer technician to address the problem, but the data could not be recovered. His reconstructed statement dated November 12 included five pages of entries listing services performed without the date or time spent on any specific entry. At the end of the statement,

---

[1]Clarity later learned this legal assistant embezzled approximately $100,000 from the firm, money that was allocated to pay Clarity's malpractice insurance premiums. Clarity testified he does not believe she took any client funds. Clarity did not pursue any legal action against her.

aggregate figures were provided: "TOTAL TIME: 225 HOURS x $300.00 = $72,000[sic]" followed by "TOTAL COSTS ADVANCED: $3,299.32" and a final line stating, "TOTAL TIME AND COSTS ADVANCED: $75,299.32."

Clarity never refunded any of the Eastons' $75,000. David Easton, represented by another attorney, ultimately was sentenced to prison.

**B. Buettner, Clark, and Leiss OWI Matters.** Clarity represented three clients—Kenley Martin Buettner, Nichole Marie Clark, and Anthony Peter Leiss—in criminal and administrative proceedings arising from charges of operating while intoxicated (OWI). Buettner retained Clarity to represent him on May 12, 2010, after he was arrested for a third offense OWI and driving while barred. Buettner paid Clarity a $15,000 retainer by three credit card payments in March and June. These payments went into the firm's general account and were not transferred into Clarity's client trust account. Clark and Leiss, who were each charged with first offense OWI, also retained Clarity. Clark's grandmother and Leiss each paid Clarity a retainer of $2500 in September and October, respectively. Clarity did not transfer these retainers into his client trust account.

On his 2011 "Client Security Commission Combined Statement and Questionnaire," Clarity responded "yes" to a question that asked whether all retainers, regardless of their size, had been deposited into a client trust account. Although Clarity later asked how to correct his misstatement, he never filed an amended questionnaire with the Office of Professional Regulation.

Clarity advised all three clients at the outset of his representation they did not need to attend any hearing unless he specifically told them to do so. Arraignments were held for Clark and Leiss on November 4, 2010, but Clarity failed to appear or notify his clients of the need to

appear. The court continued the arraignments until November 18. Clarity again failed to inform Clark or Leiss of the new date and failed to attend or continue their arraignments. As a result, the court issued bench warrants for Clark and Leiss, who were arrested and jailed. Clark and Leiss each had to post bond to secure their release. Clarity also failed to notify Buettner he needed to attend his pretrial conference scheduled for January 24, 2011. Because neither Clarity nor Buettner attended the pretrial conference, the court issued a bench warrant for Buettner's arrest. Buettner too was jailed and had to post bond to secure his release.

Clarity entered his second inpatient treatment on February 12, again without notifying these clients, the court, or the county attorney he would not be practicing during that period. Buettner, Clark, and Leiss each retained new counsel. Clark sued Clarity in small claims court and obtained a default judgment for her $2500 retainer with interest and $110 in court costs. As of the time of the commission's hearing, Clarity had not yet satisfied the judgment. Clarity also had not refunded any part of the Buettner or Leiss retainers.

**C. Rodrick and Jurine Williams Representation.** Clarity represented Rodrick and Jurine Williams as plaintiffs in a civil action filed in the Iowa District Court for Emmet County. The court granted summary judgment in favor of the defendants on September 13, 2010. Clarity filed a timely notice of appeal on October 11. But, because Clarity failed to file the combined certificate and to pay the filing fee, the clerk of this court sent Clarity a "Notice of Default and Assessment of Penalty" on November 2. Clarity failed to cure the default. As a result, we entered an order dismissing the appeal on December 8. Clarity moved to reinstate the appeal, alleging he had not received the notice of

default because the post office would not deliver mail addressed to his street address. We denied the motion to reinstate on January 11, 2011, stating:

> The order dismissing the appeal and the default notice were sent to the exact same address. Despite his earlier contentions that no mail will be delivered using that address, attorney Clarity states he received the order dismissing the appeal on December 8, 2010. The court also notes the notice and the order dismissing the appeal were sent to the same address used by Clarity on his letterhead and previous documents filed with the district court and the appellate court. Finally, Clarity offers no explanation for why he failed to comply with Iowa Rules of Appellate Procedure 6.702(1)(a) (the filing fee for the notice of appeal shall be paid within seven days after filing the notice of appeal) and 6.804(1) (the combined certificate shall be filed within seven days of the filing of the notice of appeal).

Consequently, Clarity's inaction resulted in dismissal of his clients' appeal.

**D. Procedural History.** On March 1, 2012, the Board filed a complaint alleging Clarity violated ten rules of professional conduct in connection with the above-described matters. Clarity's answer to the complaint, filed April 5, admitted some of the factual allegations, but denied he violated any of the rules identified by the Board. Pursuant to Iowa Court Rule 35.17, our court temporarily suspended Clarity's license to practice law on May 25. On May 29, at the Board's request, the commission stayed the proceedings because Clarity was incapacitated and hospitalized. On August 10, the Board applied to lift the stay to allow the ethics complaint to proceed to hearing. We granted the Board's application. The commission held a one-day hearing on December 5. The parties submitted a twelve-page stipulation in which Clarity admitted to the underlying facts supporting violations of nine of the ten rules identified by the Board. Clarity stipulated that his conduct

supports the following violations of the Iowa Court Rules and the Iowa Rules of Professional Conduct:

> a. Rules 45.7(3) and 32:1.15(c) for not depositing Clark's, Leiss's and Buettner's advanced fees into his attorney trust account;
>
> b. Rule 32:8.4(c) for making misrepresentations to the Iowa Supreme Court Client Security Commission in his certified responses to the 2011 Questionnaire on whether or not retainers were deposited into his trust account;
>
> c. Rule 45.2(2) for not providing his clients with proper accounting at the time services were rendered;
>
> d. Rule 32:1.15(a) for not maintaining complete records of his clients' account funds;
>
> e. Rule 45.7(4) for not giving the Eastons proper notice of the withdrawal of fees and expenses from his attorney trust account;
>
> f. Rule 32:1.4(3) for not keeping his clients reasonabl[y] informed of the status of their legal matters and his own inability to adequately represent their interests due to his inpatient treatments;
>
> g. Rule 32:1.4(4) for not promptly complying with his clients' reasonable requests for information about their legal matters; and
>
> h. Rule 32:1.3 for neglecting his clients' matters which resulted in three of his clients being arrested and the Williams' appeal being dismissed.

Clarity denied he violated "Rule 32:1.5(a) for charging an unreasonable fee in the Easton matter."

The parties also stipulated to aggravating and mitigating circumstances, which we discuss below in determining the appropriate sanction. The parties did not agree to the proposed discipline to be recommended. At the hearing, the commission heard testimony from Clarity and received twenty-three exhibits into evidence. The parties submitted posthearing briefs. The commission filed its "Findings of Fact, Conclusions of Law, and Recommendation" on April 1, 2013. The commission determined Clarity violated all ten of the rules alleged by the

Board, including the contested rule violation for charging an unreasonable fee. The commission made the following recommendations regarding the appropriate sanction:

> 1. Suspension of [Clarity]'s license to practice law for three (3) years commencing May 25, 2012, the date suspension was ordered by the Iowa Supreme Court under Rule 35.1[7].
>
> 2. Prior to reinstatement, [Clarity must] provide documentation showing he has maintained sobriety and continuously complied with in-patient and/or outpatient treatment for alcoholism.
>
> 3. [Clarity must] contact and cooperate with the Iowa Lawyers Assistance Program.
>
> 4. [Clarity must] satisfy the Judgment in Dickinson County, Iowa case number SCCV019610.
>
> 5. [Clarity must] pay all costs in this matter.

## III. Ethical Violations.

As noted, the commission found Clarity violated all ten of the rules the Board alleged in its complaint, including the contested violation that Clarity had charged the Eastons an unreasonable fee. We make the following determinations on our de novo review.

**A. Trust Account Violations.** The Board alleged Clarity violated Iowa Court Rules 45.7(3), 45.7(4), and 45.2(2) and Iowa Rules of Professional Conduct 32:1.15(a) and (c). These rules govern attorneys' responsibilities with regard to client trust accounts.

1. *Failure to deposit advanced fees into trust account.* The Board alleged Clarity violated rules 45.7(3) and 32:1.15(c) when he failed to deposit the advance fees he received from clients Buettner, Clark, and Leiss into a client trust account. Rule 45.7(3) requires attorneys to "deposit advance fee and expense payments from a client into the trust account." Iowa Ct. R. 45.7(3). Rule 32:1.15(c) provides that "[a] lawyer shall deposit into a client trust account legal fees and expenses that have

been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." Iowa R. Prof'l Conduct 32:1.15(c); *see also* Iowa R. Prof'l Conduct 32:1.15(a) ("Funds shall be kept in a separate account."). "Rule 32:1.15 incorporates Iowa Court Rule 45.7, which directs a lawyer as to how to handle a retainer." *McCarthy*, 814 N.W.2d at 607. Taken together, these rules strictly prohibit lawyers from commingling unearned client funds with their own property. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 918–19 (Iowa 2011) (finding a violation of rules 32:1.15 and 45.7 when the attorney failed to deposit a $500 retainer into a client trust account). Because Clarity admitted he did not deposit Buettner's $15,000 retainer or the $2500 retainers he received from Clark and Leiss into his client trust account, we conclude the Board established Clarity violated these rules. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 419 (Iowa 2012) (concluding attorney violated rule 32:1.15(c) by placing a retainer "in her 'sock drawer' for 'a number of weeks' ").

2. *Failure to provide accounting.* The Board alleges Clarity violated Iowa Court Rules 45.2(2) and 45.7(4) regarding his failure to promptly provide accounting statements. Iowa Court Rule 45.2(2) requires lawyers to "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and [to] promptly render a full accounting regarding such property." Iowa Court Rule 45.7(4) requires "[a] lawyer accepting advance fee or expense payments [to] notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting." Rule 45.7(4) further provides that this notice must be provided "no later than the date of the withdrawal." Iowa Ct. R. 45.7(4);

*see also* Iowa R. of Prof'l Conduct 32:1.15(d) ("[U]pon request by the client or third person, [a lawyer] shall promptly render a full accounting regarding [the] property.").

Not only did Clarity fail to provide an accounting to the Eastons when he withdrew funds from his client trust account, he also neglected for months to provide a billing statement to the Eastons after they repeatedly requested one. Clarity stipulated that from February to May 2010, he made twenty withdrawals for the payment of legal fees and advanced expenses from his client trust account that fully exhausted the Eastons' $75,000 retainer. Clarity admits he did not provide the Eastons with contemporaneous notice of the withdrawals. It was only after the Eastons filed a complaint with the Board in November that he created a statement and provided it to the Eastons. Accordingly, we find Clarity failed to provide the notice required under Iowa Court Rules 45.2(2) and 45.7(4) and thereby violated those rules. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 586–88 (Iowa 2011) (sanctioning attorney for failing to render an appropriate accounting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCann*, 712 N.W.2d 89, 94–95 (Iowa 2006) (finding violation when attorney did not respond to client's request for an accounting).

**B. Misrepresentation in 2011 Questionnaire.** The commission found Clarity violated Iowa Rule of Professional Conduct 32:8.4(c) because he "ma[de] misrepresentations to the Iowa Supreme Court Client Security Commission in his certified responses to the 2011 questionnaire regarding the deposit of retainers into his [client] trust account." Rule 32:8.4(c) states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). To establish a

violation of this rule, "[t]he Board must prove the attorney acted with some level of scienter greater than negligence." *Kersenbrock*, 821 N.W.2d at 421. "[A] 'casual, reckless disregard for the truth' warrants discipline." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Isaacson*, 750 N.W.2d 104, 109 (Iowa 2008) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 380 (Iowa 2002)).

Clarity's conduct rises to the level of reckless disregard for the truth. Clarity stipulated that Buettner's $15,000 retainer, Leiss's $2500 retainer, and Clark's $2500 retainer were deposited into his general fund and never transferred to his client trust account. After falsely certifying all of his retainers had been deposited into a trust account, Clarity inquired about how to file a corrected certification. This suggests he knew the one he initially filed was incorrect. Yet, he never followed through to correct his false certification. Clarity states in his posttrial brief that his "paralegal failed to deposit [the retainers] without his knowledge due to oversight on [his] part, [and] he was not aware that they were not deposited until long after the events had taken place." We find Clarity's excuse unconvincing. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 560 N.W.2d 592, 595 (Iowa 1997) ("[W]e have a strong negative reaction to a lawyer's attempt to blame professional shortcomings on an employee."); *Comm. on Prof'l Ethics & Conduct v. Postma*, 430 N.W.2d 387, 389 (Iowa 1988) (noting that blaming legal staff for failings is a "timeworn" excuse that is viewed with "unbounded skepticism, and never with admiration"). We find Clarity violated rule 32:8.4(c). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wengert*, 790 N.W.2d 94, 100 (Iowa 2010) (finding the attorney's false certification that her trust account was properly reconciled violated rule 32:8.4(c)).

**C. Failure to Keep Clients Reasonably Informed of the Status of Their Legal Matters.** The Board alleged, and the commission found, Clarity violated rule 32:1.4(a)(3), which requires a lawyer to "keep the client reasonably informed about the status of the matter." Iowa R. Prof'l Conduct 32:1.4(a)(3). Clarity stipulated to facts that establish the rule violation. Specifically, Clarity failed to inform Clark and Leiss of their arraignments, which resulted in the issuance of bench warrants for failure to appear and their arrest and incarceration. He failed to inform Buettner of his pretrial conference, resulting in Buettner's arrest and incarceration for failure to appear. Clarity failed to inform these OWI clients and the Eastons of his inability to represent them during his inpatient treatment. We conclude Clarity thereby violated rule 32:1.4(a)(3). *See McCarthy*, 814 N.W.2d at 606 (finding erroneous communications regarding dates of court hearings violated rule 32:1.4(a)(3)).

**D. Failure to Respond to Clients' Reasonable Requests for Information.** The Board alleged, and the commission found, Clarity violated rule 32:1.4(a)(4) by not complying with his clients' reasonable requests for information about their legal matters. This rule requires a lawyer to "promptly comply with reasonable requests for information." Iowa R. Prof'l Conduct 32:1.4(a)(4). Clarity first told David Easton on July 14, 2010, shortly before entering inpatient treatment at Hazelden, that he had spent the entire $75,000 retainer. Easton sought to transfer his file to a new attorney, but was kept waiting until mid-August. Easton also repeatedly sought an explanation from Clarity for how the retainer was spent. Clarity failed to respond with any explanation until November 12, after Easton filed an ethics complaint on November 5. We conclude Clarity violated rule 32:1.4(a)(4). *See Iowa Supreme Ct. Att'y*

*Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 307–08 (Iowa 2009) (failure to respond to repeated requests for information and to account for retainer fees violated rule 32:1.4(a)(4)).

**E. Neglect of Client Matters.** The Board alleged, and the commission found, Clarity violated rule 32:1.3 by neglecting client matters. Clarity stipulated to the facts underlying this rule violation. Rule 32:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. Prof'l Conduct 32:1.3. This rule is violated when a lawyer fails to attend scheduled court proceedings. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 150, 152–53 (Iowa 2010). Clarity missed the arraignments for Clark and Leiss, resulting in their arrests and incarcerations. Clarity missed Buettner's pretrial conference, resulting in his arrest and incarceration. Rule 32:1.3 is also violated when an attorney's neglect results in the client's loss of a right to appeal. *See Dolezal*, 796 N.W.2d at 917. Clarity failed to cure his defaults in the Williams appeal, resulting in its dismissal with prejudice. We conclude Clarity's neglect of each of these matters violated rule 32:1.3.

**F. Charging an Unreasonable Fee.** The Board alleged, and the commission found, Clarity's $75,000 fee collected from the Eastons violated Iowa Rule of Professional Conduct 32:1.5(a), which prohibits attorneys from "mak[ing] an agreement for, charg[ing], or collect[ing] an unreasonable fee or an unreasonable amount for expenses." Clarity contested this rule violation.

The Board has the burden of proving by a convincing preponderance of the evidence that Clarity charged or collected an unreasonable fee. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon*, 789 N.W.2d 756, 759–60 (Iowa 2010); *see also Rhinehart*, 827 N.W.2d at

171, 181. We consider the following factors in determining the reasonableness of the fee:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

Iowa R. Prof'l Conduct 32:1.5(a).

No expert testimony was offered on the reasonableness of Clarity's hourly rate or fee. We find his $300 hourly rate to be reasonable for an Iowa attorney of his experience. He had practiced law since 1976. About forty percent of his practice was criminal law. The Eastons faced complex felony criminal charges. They agreed to pay his hourly rate. Clarity had handled similar cases. Other experienced Iowa criminal defense lawyers charge a $300 hourly rate.

The fighting issue is the number of hours charged by Clarity in light of the result obtained. As discussed above, he was unable to provide his original handwritten billing records or the computer records of the time entered by his legal assistant. Months later, he re-created a six-page statement listing tasks performed, without dates or the time spent on each task, but with a stated total time of 225 hours, which, multiplied by his $300 hourly rate plus expenses, conveniently reaches

the entire $75,000 retainer. The statement indicates he sent twenty-three letters, reviewed nineteen letters he received, conducted twenty-six conferences by phone or at his office, and performed legal research on six occasions. The rest of the time was reportedly spent reviewing the claims identified by patient name. He claims no time for any trial, hearing, depositions, motions, or briefs. He never showed that his many hours of research or claims review were summarized or memorialized to capture his analysis. Presumably, the time he spent researching and reviewing claims had to be redone by the attorney who took over the case.

We have no doubt a lawyer defending a felony Medicare billing fraud case may spend significant time reviewing patient records. But, in a case like this in which the client never received a bill until months after the lawyer paid himself the retainer, and the belated, re-created billing statement is cryptic, the credibility of the billing attorney is of central importance. The commission found Clarity's testimony was not credible. In finding the Board proved by a convincing preponderance of the evidence that Clarity had charged an excessive fee in violation of rule 32:1.5(a), the commission stated:

> The trust account records, general account records of the law firm, along with the party's Stipulations regarding when and how retainers were received support the Board's allegation. [Clarity] testified regarding the special nature of the litigation, its complexity, volume of discovery, and the serious consequences both the criminal and civil cases brought against the Eastons. [Clarity] testified generally about time spent on the case and how time slips and time notes were kept. [Clarity] did not present any other evidence supporting the hourly rate charged, accounting of time or expenses, or the reasonableness of the retainer. Although the Eastons faced serious consequences both criminally and civilly, *[Clarity]'s testimony about the reasonableness of the fees is not credible. The failure of [Clarity] to offer any corroborating evidence; the contrast of his testimony to the trust account records and general account records of the law firm; his extremely vague . . . generalizations of the work*

*performed; his admitted neglect of his practice during this time frame; and, in light of the other evidence stipulated to by [Clarity] erodes completely the credibility of the testimony.*

(Emphasis added.)

We give deference to the commission's credibility determination because the commission heard Clarity's live testimony and observed his demeanor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v Bowles*, 794 N.W.2d 1, 3 (Iowa 2011) ("This court gives special weight to the commission's findings concerning the credibility of witnesses."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Plumb*, 766 N.W.2d 626, 632 (Iowa 2009) ("Granting appropriate deference to the commission's credibility findings, we adopt the commission's findings as our own."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 702 (Iowa 2006) ("[T]his court does not often disregard the credibility determinations of the commission . . . ."); *see also In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (discussing the importance in credibility determinations of hearing live testimony to observe demeanor).

We reach the same conclusion as the commission, relying on our own review of the record and the commission's determination that Clarity's testimony was not credible. The bank records show Clarity made twenty separate withdrawals from February 3 through May 3, 2010, which collectively exhausted the $75,000 retainer. He made withdrawals on four consecutive days in February. He made three separate withdrawals on March 16 and two more on April 5, followed by matching $3000 withdrawals on April 15 and 16 and a $7000 withdrawal on April 20. Clarity's pattern of withdrawals differs from the single monthly or quarterly withdrawal typical for a lawyer who periodically collects earned fees. The frequency and odd amounts of his withdrawals look more like a lawyer using his client trust account as a personal ATM.

Another red flag is the urgency with which Clarity sought an additional $15,000 from the Eastons on the eve of his departure for inpatient treatment.

We consider the $75,000 Clarity collected from the Eastons in light of "the results obtained." Iowa R. Prof'l Conduct 32:1.5(a)(4). Clarity claims credit for avoiding criminal charges against Jane Easton. Otherwise, he cannot show he accomplished anything for David Easton, who ultimately was sentenced to prison after his case was concluded by another lawyer. Clarity failed to show that any of his time spent researching the law or reviewing claims was memorialized in a form that assisted Easton's new lawyer or avoided the need to replicate those efforts.

We conclude the Board proved by a convincing preponderance of the evidence that Clarity charged the Eastons an unreasonable fee in violation of rule 32:1.5(a).

## IV. Sanction.

There is no standard sanction for particular types of misconduct. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 441 (Iowa 2012). "Although prior cases are instructive, we determine the appropriate sanctions in light of the unique circumstances of the case before us." *Rhinehart*, 827 N.W.2d at 182.

> When crafting a sanction, we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Id.* (internal quotation marks omitted).

The commission recommended we suspend Clarity's license to practice law for three years from the date his second disability

suspension began, May 25, 2012. We give respectful consideration to the commission's recommendation. The commission accurately recited Clarity's rule violations and the mitigating and aggravating circumstances as follows:

> [Clarity's] conduct resulted in multiple instances where he neglected client matters, neglected management of client funds and trust account records, and neglected client requests. [Clarity] cites his alcoholism as the primary cause of his violations and a mitigating factor. He also cites his 37 years of practice, admission to practice in various federal courts, certifications held with several professional organizations, and prior military service. [Clarity's] compliance with in-patient treatment for alcoholism and continued outpatient treatment are also commendable.

> A number of aggravating factors must be considered as well. [Clarity] has been privately admonished by the Attorney Disciplinary Board on three prior occasions. His 37 years of experience as an attorney aggravates his neglect in handling client matters and the handling of client funds. The serious harm his clients suffered as a result of his misconduct is also aggravating: three clients were arrested and jailed, an appeal was dismissed with prejudice, clients had to retain other counsel, and retainers were not returned. Although [Clarity] repeatedly stated he was the "captain of the ship", he did not acknowledge the harm caused to these clients. Instead of expressing any remorse for his clients, he cited computer problems, missing documentation, and employee theft.

We first address Clarity's alcoholism. In his stipulation, he "acknowledge[d] and admit[ted] that he is an alcoholic and the difficulties he has caused his clients were the result of his alcoholism." Alcoholism, however, "is not a 'legal justification, excuse, or defense'" for Clarity's actions. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 812 N.W.2d 4, 11 (Iowa 2012) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 41 (Iowa 2011)); *see also Florida Bar v. Golub*, 550 So. 2d 455, 455 (Fla. 1989) ("While alcoholism explains the respondent's conduct, it does not excuse it."). Nevertheless, "[a]lcoholism can be a mitigating factor." *Weaver*, 812 N.W.2d at 15; *see also Iowa*

*Supreme Ct. Att'y Disciplinary Bd. v. Roush*, 827 N.W.2d 711, 718–20 (Iowa 2013) (considering the attorney's rehabilitative efforts and surveying cases imposing sanctions ranging from thirty days to one year for disciplinary violations related to alcoholism and substance abuse); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Axt*, 791 N.W.2d 98, 103 (Iowa 2010) (considering as a mitigating factor the attorney's "rehabilitative efforts in actively attempting to control his addiction to alcohol"); *Hauser*, 782 N.W.2d at 154) (noting that to the extent the attorney acknowledged his alcoholism and takes steps to address the problem, the court will consider these acts in fashioning an appropriate sanction).

To be considered in mitigation, the alcoholism must have contributed to the ethical misconduct, and the lawyer must undertake rehabilitative efforts to control his addiction. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, ___ N.W.2d ___, ___ (Iowa 2013) (citing *Weaver*, 812 N.W.2d at 13; *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ruth,* 636 N.W.2d 86, 89 (Iowa 2001) (considering a lawyer's efforts to remain sober as a mitigating factor)); *see also Cleveland Metro. Bar Ass'n v. Toohig,* 979 N.E.2d 332, 341–42 (Ohio 2012) (declining to consider alcoholism as a mitigating factor without a showing that it "contributed to cause the misconduct" and noting much of the charged misconduct occurred after lawyer gained sobriety); *Disciplinary Counsel v. Hoppel*, 950 N.E.2d 171, 176–77 (Ohio 2011) (mitigating sanction based on attorney's successful treatment and cooperation with lawyer-assistance program); *State ex rel. Okla. Bar Ass'n v. Haave*, 290 P.3d 747, 757 (Okla. 2012) (Kauger, J., concurring specially) ("[A]lcohol abuse or alcoholism may serve as a mitigating factor where the offending attorney recognizes the problem and seeks and cooperates in treatment.").

"[O]ur primary goal is not to punish the attorney, but 'to protect the public from lawyers rendered unfit from any cause.' " *Weaver*, 812 N.W.2d at 15 (quoting *Hauser*, 782 N.W.2d at 154). We imposed a two-year suspension in *Weaver* for an OWI third and third-degree harassment, noting that Weaver repeatedly refused "to seek the help that is necessary for him to successfully cope with his depression and alcoholism." *Id.* By contrast, Clarity has repeatedly undergone weeks of inpatient treatment and ongoing outpatient treatment to cope with his alcoholism, albeit with mixed success. We consider his efforts to be a mitigating factor. Yet, Clarity has not demonstrated he has successfully rehabilitated himself to the point he is able to practice law at this time, and he remains under disability suspension. *See Nelson*, ___ N.W.2d at ___ (considering in mitigation the attorney's successful rehabilitation and return to the practice of law); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah*, ___ N.W.2d ___, ___ (Iowa 2013) (considering as mitigating factor the attorney's treatment for his alcoholism and depression).

Mindful of Clarity's struggle with alcoholism, we next consider the sanctions appropriate for his rule violations. Clarity committed multiple trust account and accounting violations and neglected his clients. We have imposed suspensions for such violations ranging from thirty days to four months. *See Boles*, 808 N.W.2d at 441–42 (collecting cases). His neglect resulted in the dismissal with prejudice of the Williams appeal and the jailing of three OWI clients. We have imposed suspensions of one to six months when the attorney's neglect caused harm to clients. *See Dolezal*, 796 N.W.2d at 921–22 (reviewing cases); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Box*, 715 N.W.2d 758, 765 (Iowa 2006) ("We have consistently held that harm to a client or third party is an aggravating factor with regard to disciplinary violations.").

In *Hauser*, we disciplined an experienced attorney who, like Clarity, struggled with alcoholism. Hauser failed to appear at a scheduled dissolution trial and failed to inform his client of the trial, resulting in entry of a default judgment. *Hauser*, 782 N.W.2d at 150. Hauser, like Clarity, also committed multiple trust account violations. *Id.* at 151–53. At the commission hearing, Hauser admitted to being an alcoholic and testified to his current sobriety and involvement with Alcoholics Anonymous, but failed to show he had received or is seeking professional treatment for his alcoholism. *Id.* at 154. We imposed a six-month suspension for Hauser's rule violations. *Id.*

In addition, Clarity violated the rule against charging unreasonable fees. "We have imposed suspensions ranging from sixty days to two years for violations of the rule prohibiting excessive fees." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Laing,* 832 N.W.2d 366, 374 (Iowa 2013) (collecting cases).

We also consider that Clarity recently has been privately admonished by the Board on three occasions. The stipulation describes those private admonishments as follows:

> The first, in March 29, 2010, was for failure to respond to a Board request for information pursuant to Rule 32:8.1. The second, April 1, 2011, was for failing to keep his client informed pursuant to Rule 32:1.4(a)(3). The third, dated September 27, 2011, was for failure to comply with the CLE reporting requirements of Rule 32:7.4(e).

Clarity blames those transgressions on his drinking. "[T]his court has repeatedly considered prior admonitions as aggravating circumstances that relate directly to an appropriate sanction." *Parrish,* 801 N.W.2d at 589.

Finally, we consider that Clarity has been under disability suspension for alcoholism since May 25, 2012, and his ethical

transgressions at issue now are attributable to that disease. Disability suspensions and disciplinary suspensions serve overlapping but distinct purposes. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Maxwell*, 705 N.W.2d 477, 480 (Iowa 2005). Both types of suspension protect the public. But, "a disability suspension is not a sanction and does not specifically address unethical conduct and the need to deter future conduct." *Id.* Moreover, the standards for reinstatement differ for each type of suspension. *Id.* at 480–81. Nevertheless, we can consider an interim suspension arising from the same conduct when calibrating the disciplinary suspension. *See Nelson*, ___ N.W.2d at ___ (taking into account attorney's two-year interim suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 839 N.W.2d 355, 359–60 (Iowa 2013) ("[T]he interim seven-month suspension weighs heavily in this case . . . ."). In *Nelson*, the attorney was under disability suspension for alcoholism for two years and eight days before his reinstatement on July 31, 2012. *Nelson*, ___ N.W.2d at ___. Nelson had been maintaining sobriety and practicing law without further incident for over thirteen months when we determined his disciplinary sanction. His successful rehabilitation was a significant mitigating factor. Clarity, on the other hand, has remained under his second disability suspension for more than fifteen months without seeking reinstatement. We conclude Clarity warrants a disciplinary suspension separate and apart from his ongoing disability suspension to "uphold public confidence in the justice system and maintain the reputation of the bar." *Powell*, 839 N.W.2d at 360. We hold a one-year disciplinary suspension is appropriate, to run from the date of this opinion.

### V. Disposition.

For the reasons stated, we suspend Clarity's license to practice law with no possibility of reinstatement for one year from the date of this opinion. Prior to reinstatement, Clarity must provide medical documentation from a licensed health care professional regarding his maintenance of sobriety and his fitness to practice law. Pursuant to rule 35.13(3), this suspension applies to all facets of the practice of law. All costs are taxed to Clarity pursuant to rule 35.27(1). As a condition of reinstatement, Clarity must satisfy the judgment obtained against him by Clark.

Prior to reinstatement, Clarity must also show that he has not practiced law during the period of suspension, has notified his clients as required by rule 35.23, has paid all costs required by rule 35.27(1), and meets the requirements of rule 35.43. Following this suspension, Clarity's disability suspension will remain in place until he has shown "by clear and convincing evidence[] that [his] disability has been removed and [he] is fully qualified to resume the practice of law." Iowa Ct. R. 35.17(7).

**LICENSE SUSPENDED.**