# IN THE SUPREME COURT OF IOWA

No. 15–0641

Filed September 4, 2015
Amended September 10, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**MICHAEL HOCINE SAID,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports the respondent committed multiple ethical violations and recommends a thirty-day suspension of the attorney's license. **LICENSE SUSPENDED.**

Charles L. Harrington and Teresa Vens, Des Moines, for complainant.

Matthew C. McDermott of Belin Lamson McCormick Zumbach and Flynn, Des Moines, for respondent.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged attorney Michael Hocine Said with violating the rules of professional conduct for failing to communicate with his client, making a false statement to the court, and failing to comply with fee and trust account requirements. Following a hearing, the Grievance Commission of the Supreme Court of Iowa found Said violated several rules and recommended a thirty-day suspension. On our review, we find Said violated the Iowa Rules of Professional Conduct and impose a thirty-day suspension.

## I. Background Facts and Prior Proceedings.

Michael Said is an Iowa lawyer who is engaged in the practice of law in Des Moines. He graduated from law school in 1989 and received an LL.M. in international studies in 1990. He worked in Washington, D.C., before moving to Iowa with his wife. Said was admitted to practice law in Iowa in 1994. He founded his own law firm in 1999 and currently practices with two other attorneys. His primary areas of practice are immigration law and criminal defense. Said is fifty-five years old. He has received four prior private admonitions.

Said is known to be a zealous, competent advocate who is devoted to his clients. He has a good reputation among other lawyers. Said also provides volunteer legal services to needy Iowans through a variety of entities. He was cooperative with the Board throughout the proceedings, was remorseful for his conduct, and has taken corrective measures to prevent future problems.

The disciplinary action originates from Said's conduct in representing a client in a deportation proceeding. The facts were revealed in a disciplinary hearing before the grievance commission on

January 23, 2015, after the Board filed a complaint on September 15, 2014.

The client, Pedro Hernandez, hired Said on June 1, 2006, after the Department of Homeland Security commenced removal proceedings against him. Said and Hernandez entered into a flat-fee contract of $5200 for representation in the deportation case before the Executive Office of Immigration Review. Hernandez paid $2600 on that day and paid the remainder in monthly installments over the following nine months. The written agreement included a provision authorizing Said to withdraw seventy-five percent of the advance fee upon the filing of the "application packet," with the remainder withdrawn "as worked."

Said placed the flat-fee advance payments into his trust account and began making periodic withdrawals of various amounts shortly after the initial deposit. He did not notify Hernandez of any of the withdrawals, and he withdrew most of the funds by the end of 2007.

The proceedings against Hernandez were involved and spanned several years, building to a hearing before an immigration judge in January 2012. On October 15, 2012, the immigration court issued an order denying Hernandez's application to cancel the removal. It did, however, grant him the opportunity for voluntary departure in lieu of removal. The order was sent to Said's office while the legal assistant responsible for distributing the mail was on maternity leave and was subsequently misplaced. It was not discovered until November 26, after the thirty-day period for appeal had expired.

Said and another attorney in the office promptly prepared a motion to stay deportation and a notice of appeal. Both documents were filed with the Board of Immigration Appeals (BIA). The attorneys sought relief based on the misplaced order. In particular, the motion to stay

deportation explained that Hernandez did not receive timely notice of the order through no fault of his own and that Said was "preparing" a notice of his conduct in missing the appeal deadline for review by the attorney disciplinary board. Said further alleged in the motion that the notice would be sent to the BIA under separate mailing, and he would forward a copy of the notice to the immigration court after filing it with the disciplinary board. Said, however, never self-reported his conduct to the disciplinary board and, in turn, never forwarded any notice to the immigration court. The BIA subsequently denied the relief sought by Said for Hernandez on January 31, 2013.

Said presented evidence at the commission hearing that he promptly told Hernandez about the immigration court order and the missed deadline and that he further obtained the approval of Hernandez to proceed with his case. Hernandez, however, testified Said did not inform him of any of these matters until much later. Hernandez said he was not told of the removal order or the missed appeal deadline until a meeting with Said in March 2013. At that time, Said and Hernandez discussed the problem, and Hernandez decided to obtain new counsel. To support his claim that Said never told him about the removal order and the missed deadline until March 2013, Hernandez testified that he traveled by airplane after December 2012 and would never have done so if Said had told him about the existence of a removal order, due to the immediate risk of apprehension and deportation.

## II.  Board Complaint.

The Board charged Said with multiple violations of the Iowa Rules of Professional Conduct and related court rules. Count I included the violations relating to Said's communication with Hernandez and the immigration court. Said was charged with violating rules 32:1.4(a)(3)

(keep client reasonably informed), 32:1.4(b) (explain matters to extent reasonably necessary for client to make informed decisions), and 32:3.3(a)(1) (candor with tribunal) of the Iowa Rules of Professional Conduct. Count II encompassed violations relating to trust account maintenance and fee payment. The Board charged Said with violating Iowa Rule of Professional Conduct 32:1.15(c) (withdraw fees only as earned) and four Iowa Court Rules under rule 32:1.15(f): rules 45.2(2) (maintain complete records and provide accounting[1]), 45.10(3) (withdrawal of flat fee), 45.7(3) (withdraw fees as earned), and 45.7(4) (notification and accounting upon withdrawal).

Following the January 2015 disciplinary hearing, the grievance commission found the Board established Said violated all the rules in the complaint by a "convincing preponderance of the evidence." The commission recommended Said's license be suspended for thirty days. Said asserts his conduct only supports a public reprimand.

### III. Scope of Review.

"We review attorney disciplinary matters de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 201 (Iowa 2015). "Attorney misconduct must be proven by a convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bartley*, 860 N.W.2d 331, 335 (Iowa 2015). "We respectfully consider the commission's findings and recommendations, but are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Engelmann*, 840 N.W.2d 156, 158 (Iowa 2013). Upon a finding of misconduct, we may

---

[1]Because the violations occurred in 2006–2007, we apply the Iowa Court Rule that was then in effect. In 2012, rule 45.2(2) was split with accounting requirements remaining in rule 45.2(2), and records maintenance requirements greatly expanded and explained in rule 45.2(3).

impose a greater or lesser sanction than recommended by the commission. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 697 (Iowa 2014).

**IV. Violations.**

**A. Duty to Keep Client Informed.** We first consider the charge that Said neglected his client by failing to keep him reasonably informed about the status of his case. Iowa R. Prof'l Conduct 32:1.4(a)(3). The commission found Said neglected his client by failing to notify him of the removal order during and after the appeal period. Said claimed his conduct in missing the appeal deadline was inadvertence, not professional neglect. He also asserted he promptly informed his client about the oversight after the appeal deadline was missed and that he informed him of the steps he had taken to seek an appeal prior to the time that he filed a motion to stay deportation and notice of appeal.

Professional neglect is more than an isolated instance of negligence and "normally involves more than a single act or omission." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kennedy*, 684 N.W.2d 256, 260 (Iowa 2004). Thus, "[a]cts or omissions resulting from mere inadvertence or errors of judgment made in good faith do not generally justify attorney discipline." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 730 N.W.2d 202, 206 (Iowa 2007). On the other hand, the failure to perform multiple obligations that the lawyer has assumed, either through indifference or a conscious disregard for responsibilities owed to the client, may rise to the level of professional neglect. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 438 (Iowa 2012).

The missed deadline in this case, by itself, would not support a finding of neglect in violation of rule 32:1.4(b). The conduct by Said,

however, in failing to reasonably inform the client about the status of the case following the missed deadline would support a finding of neglect. Thus, the resolution of this issue ultimately depends upon the resolution of the conflicting evidence presented at the commission hearing.

If evidence at a commission hearing is in conflict, we normally defer to the credibility determination made by the commission. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 659 (Iowa 2013); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weiland*, 862 N.W.2d 627, 639 (Iowa 2015). The commission in this case found Said did meet with his client after the missed deadline was discovered, but did not inform him of the matter. The commission rejected Said's contrary evidence and found he delayed in informing his client of the problem for several months. We defer to the findings of the commission and conclude Said violated rule 32:1.4(a)(3) by failing to keep his client reasonably informed about the status of the case.

**B. Duty to Explain Matters to Client.** We next consider the charge that Said failed to "explain a matter [to his client] to the extent reasonably necessary to permit the client to make [an] informed decision[] regarding the representation." Iowa R. Prof'l Conduct 32:1.4(b). The commission found Said should have promptly advised his client about the process of asserting a claim of ineffective assistance of counsel as grounds for relief from the missed deadline, and he did not do so until March 2013.

Since we find, as the commission did, that Said did meet with his client on December 6, we also conclude he violated rule 32:1.4(b) by failing to explain the missed deadline matter at that time so that the client could make an informed decision about the representation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mendez,* 855 N.W.2d 156, 170

(Iowa 2014); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Yang,* 821 N.W.2d 425, 430 (Iowa 2012). The client should have been given information by Said to better participate in the objective of the representation. *See* Iowa R. Prof'l Conduct 32:1.4(b) cmt. 5.

**C. Duty Not to Make False Statements.** We next consider the charge that Said knowingly made a false statement of fact to a tribunal, or knowingly failed to correct a false statement. *Id.* r. 32:3.3(a). The commission found Said falsely alleged in the motion for stay of deportation filed with the BIA that he was "preparing" a "notice of this matter for review by the Ethics Board," and would "forward [the] filing to the Board of Immigration Appeals" in support of the accompanying motion to permit a late appeal.

Although Said never prepared a notice to the disciplinary board and never forwarded any notice to the BIA, there was evidence in the record that Said was working with an associate in his firm after the missed deadline was discovered to protect the interests of his client. This work included a discussion about making a report to the attorney disciplinary board and using this report to permit the client to proceed with an appeal based on ineffective assistance of counsel. When a motion to reopen is based on a claim of ineffective assistance of counsel due in part to a violation of ethical or legal responsibilities, "the motion should reflect whether a complaint has been filed with the appropriate disciplinary authorities regarding such representation, and if not, why not." *In re Lozada,* 19 I. & N. Dec. 637, 639 (BIA 1988) (noting a report to the disciplinary authorities is necessary "to deter meritless claims of ineffective representation" and reinforce standards of conduct). Said, however, subsequently failed to self-report to the Board. Said claims

these circumstances do not support a finding that he knew the statement was false at the time it was made.

Rule 32:3.3 is violated when a lawyer "knowingly . . . make[s] a false statement." Iowa R. Prof'l Conduct 32:3.3(a)(1). The word " 'knowingly' . . . denotes actual knowledge of the fact in question." *Id.* r. 32:1.0(f). In this case, Said knew he made a statement to the immigration court. The fact in question is whether he knew the statement was false. He claims it was not false because he intended at the time he made the statement to send a notice to the disciplinary board and to forward it to the tribunal, but subsequently forgot.

The statement at issue in this case addressed both the present act of preparing and filing a notice to the disciplinary board and the future act of forwarding the notice to the BIA. The statement also informed the tribunal that notice was being prepared for delivery by mail separate from the motion being mailed to the tribunal. Overall, the statement made by Said in the motion communicated to the tribunal that a notice was going to the disciplinary board in conjunction with the filing of the motion to the tribunal. Yet, Said acknowledged in his testimony at the disciplinary hearing that he never prepared any notice. "A person's knowledge may be inferred from circumstances." *Id.* The evidence does not support a finding that Said was, in fact, preparing a notice to the disciplinary board when the statement was made. Under all the circumstances in this case, we conclude Said had actual knowledge that the statement to the tribunal was false at the time it was made.

**D. Withdrawal of Fees in Client Trust Account.** We next consider the charge that Said did not comply with the requirement to withdraw fees in a client trust account only as he earned the fees. *Id.* r. 32:1.15(c). The commission found Said violated this rule because the

withdrawals he made from the trust account did not coincide with his separate records of the work performed.

The resolution of this charge is made difficult by Said's poor recordkeeping practices and the presence of a flat-fee arrangement. Said argues that the flat-fee arrangement authorized him to withdraw fees at times that would not necessarily coincide with the time he actually worked on the case.

A flat fee is a fee for all services a lawyer must perform to complete the agreed task. *Id.* r. 45:10(1). A "flat fee [i]s nothing more than an advance fee payment" and all requirements for advance fees must be followed. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 55 (Iowa 1998). If the flat fee is paid in advance, the fee must be deposited into the trust account. Iowa Ct. R. 45.10(2). A portion of the fee may be withdrawn before all work is completed only if the portion withdrawn has been earned. *Id.* r. 45.10(3). Yet, under a flat fee, the portion earned does not necessarily track with the amount of time devoted to the case. On the other hand, a flat fee does not authorize withdrawals independent of the work performed or the work remaining to be performed. *See id.*

We recognize withdrawal of portions of a flat fee paid in advance can present difficult questions for lawyers. Yet, these questions can be minimized by agreements that designate the times withdrawals will be made and transparent recordkeeping that justifies the withdrawal of fees. *See id.*; *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 918 (Iowa 2011) (noting contemporaneous accounting is necessary in the event a refund is needed); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690 697–98 (Iowa 2008) (requiring withdrawals occur as earned, either at identified reasonable milestones or at the

completion of service). The important concept that must prevail is that the withdrawal of fees be done in a way that promotes trust and confidence in our legal system. *See Boles*, 808 N.W.2d at 441. The client's right to a refund of unearned fees in the event the client would discharge the lawyer before the service is complete must be protected. Iowa Ct. R. 45.10(3).

Said and his client did have a written flat-fee agreement that provided for the periodic withdrawal of fees. Nevertheless, the withdrawal terms of the contract had little relevance to the particular case. The withdrawal terms dealt with those clients seeking to immigrate to the United States by making an application. The agreement permitted Said to withdraw seventy-five percent of the flat fee once the application package was completed, with the remainder to be withdrawn "as worked." In this case, the client had entered the United States in 1988 under an asylum visa. He was being removed by the government. He sought the services of Said to prevent the removal, not to immigrate. Said was not preparing any application package, and the agreement to withdraw fees in advance of completing the services in this case did not apply.

The facts revealed Said periodically withdrew fees with no clear connection to any milestone in the case, any specific work performed, or any relationship to the services remaining to be performed. Instead, the withdrawals were more consistent with the odd and frequent withdrawals we have disapproved of in the past. *See Clarity*, 838 N.W.2d at 659. We find Said violated Iowa Rule of Professional Conduct 32:1.15(c) in making withdrawals from the advance payment of the flat fee deposited in a trust account before he earned the portion withdrawn.

**E. Duty to Comply with Court Rules Governing Trust Accounts.** We next consider the charge that Said violated rule 32:1.15(f) by failing to comply with a number of court rules governing trust accounts. Rule 45.2(2) requires an attorney to maintain complete records of client property that comes into the lawyer's possession and regularly account to the client for the property. Iowa Ct. R. 45(2)(2). Rule 45.10(3) requires any agreements for the withdrawal of flat fees paid in advance protect the client's right to a refund of unearned fees if the lawyer is discharged before the service is completed. *Id.* r. 45.10(3). It also repeats the rule 32:1.15(c) admonition that other unearned fees may not be withdrawn. *Id.* Rule 45.7(3) requires a lawyer to deposit an advance fee from a client into the trust account and withdraw it only as it is earned. *Id.* r. 45.7(3). Rule 45.7(4) requires a lawyer who accepts an advance fee to notify the client of the time, amount, and purpose of any withdrawal, together with a complete accounting. *Id.* r. 45.7(4). The Board claims Said violated each court rule.

Said admitted he violated rule 45.7(4) by failing to provide written notification to his client when he withdrew fees. He also violated rule 45.2(2) by failing to properly account for the funds. We do not consider the remaining claims that Said violated rule 45.10(3) and rule 45.7(3) when he withdrew fees before they were earned. The Board prosecuted Said for this conduct under rule 32:1.15(c). Nevertheless, we find Said violated rule 32:1.15(f) by failing to comply with the court rules governing trust accounts.

**V. Sanctions.**

"There is no standard sanction for particular types of misconduct." *Clarity*, 838 N.W.2d at 660. In the imposition of sanctions, we consider the violations at issue, the need to deter future violations, the protection

of the public, the reputation of the bar, the attorney's fitness to practice law, and aggravating and mitigating circumstances. *Bartley*, 860 N.W.2d at 337.

In neglect cases, our sanctions have generally ranged from a public reprimand to a six-month suspension. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009). When neglect is combined with other misconduct, we typically impose a suspension. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel*, 809 N.W.2d 96, 109 (Iowa 2012). Trust account violations alone can result in public reprimand, license suspension, or revocation, depending on the severity and frequency of violation and whether misappropriation resulted. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 588 (Iowa 2011).

When determining what sanctions to impose, we consider those imposed in similar cases while remaining aware of the different circumstances in each case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Humphrey*, 812 N.W.2d 659, 666 (Iowa 2012). In 2012, we publicly reprimanded an immigration attorney who failed to communicate the need to file an ethics complaint to proceed with an ineffective-assistance appeal, but did not have any trust account violations before us. *Yang*, 821 N.W.2d at 430–31. In *Dolezal*, the attorney neglected client matters, failed to deposit client funds into a trust account, and failed to provide proper accounting, resulting in a thirty-day suspension. 796 N.W.2d at 922–23 (noting public reprimand would be more appropriate in a case with a single instance of misconduct). In *Boles*, the attorney's "flagrant, multiyear disregard for the billing and accounting requirements of our profession," combined with subsequent corrections to trust account practices, also resulted in a thirty-day suspension. 808 N.W.2d at 441–

42. In a case in which the attorney failed to refund unearned fees in addition to deficient accounting, we suspended the attorney's license for sixty days. *Parrish*, 801 N.W.2d at 587, 590.

We also consider all mitigating and aggravating circumstances in each case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Adams*, 749 N.W.2d 666, 670 (Iowa 2008). We consider prior discipline as an aggravating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 127 (Iowa 2013). Said had been the subject of four private admonitions from the Iowa Supreme Court Attorney Disciplinary Board starting in 2003, one of which included an admonishment for conduct similar to one of the violations in this case. While "[p]rivate reprimands are not discipline," they provide notice of deficiencies in regards to particular ethical requirements by attorneys. *Van Ginkel*, 809 N.W.2d at 110.

Said argues lack of harm to his client should be a mitigating factor. Hernandez agreed he was not harmed by the trust account violations, and he received all the services he was entitled to under his flat-fee contract. Said argues his client was able to spend an additional two years with his family during the pendency of the legal proceedings. Further, Said points to a November 2014 executive order by the President of the United States that could allow his client to avoid deportation. However, the absence of client harm is not attributable to Said's actions, but instead is due to the pace of immigration proceedings and a high-level policy change that was not in effect at the time of the negligent and neglectful actions. Therefore, the absence of client harm is not a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Baldwin*, 857 N.W.2d 195, 215 (Iowa 2014) (finding that a return to the

original state after the problems did not mean no harm resulted from the neglect).

Nevertheless, mitigating factors have also been established. Said has taken corrective measures, including cross-training staff, improving trust account and billing practices, and employing an accountant to ensure trust account compliance. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 543 (Iowa 2013) (considering the improvement of billing and accounting practices and the employment of additional help as mitigating factors). He provides legal services to an underserved community. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 268 (Iowa 2012) ("Providing legal representation to an underserved part of the community is a significant mitigating factor."). The service by an attorney to a vulnerable population with limited English language skills and lack of familiarity with the American legal system can be a mitigating factor. *See Mendez*, 855 N.W.2d at 173. Said has also performed substantial pro bono work, another mitigating factor. *Boles*, 808 N.W.2d at 442 (finding extensive community service and pro bono practice to be a significant mitigating factor).

After careful consideration of all the relevant facts and circumstances of the case, we agree with the commission that a thirty-day suspension is appropriate. Said took proper action upon the discovery of the appeal oversight, but did not timely communicate to his client any of the events that followed or the consequences of those events. He then failed to perform the actions he had told the court were in progress and did not correct his statement to the court to admit his inaction. Said also did not follow adequate billing and accounting practices for a period of years. The business side of a law practice may not be an area on which attorneys want to spend their time, but it

safeguards important client interests and requires the same attention to detail as the entire practice of law.

### VI. Conclusion.

We suspend Said's license to practice law in this state with no possibility of reinstatement for thirty days from the filing of this opinion. The suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.13(3). Said must comply with the notification requirements of Iowa Court Rule 35.23. Absent an objection by the Board, Said shall be automatically reinstated after the thirty-day suspension period under the condition that all costs assessed under rule 35.27 have been paid. *Id.* r. 35.13(2). We tax the costs of this action to Said pursuant to Iowa Court Rule 35.27(1).

**LICENSE SUSPENDED.**

All justices concur except Hecht, J., who takes no part.