# IN THE SUPREME COURT OF IOWA

No. 16–0199

Filed November 10, 2016

Amended January 24, 2017

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**LAURIE JEAN PEDERSON,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports the respondent committed multiple ethical violations and recommends a three-month suspension of the attorney's license. **LICENSE SUSPENDED.**

Tara van Brederode and Amanda K. Robinson, for complainant.

Laurie Jean Pederson, Rockford, pro se.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged attorney Laurie Jean Pederson with violating various rules of professional conduct, including the rules governing communications with a represented party, taking a probate fee, business transactions with a client, trust account requirements and advance fees, and limited representation of a client. The Grievance Commission of the Supreme Court of Iowa found Pederson violated several rules and recommended a three-month suspension. Upon our review, we find Pederson violated the Iowa Rules of Professional Conduct and impose a sixty-day suspension.

## I. Background Facts and Proceedings.

Laurie Jean Pederson is an Iowa lawyer. She was admitted to practice law in Iowa in 2001 and has worked as a sole practitioner in Rockford, Iowa, throughout her career. Pederson has been publicly reprimanded in the past.

The disciplinary proceedings against Pederson involve her conduct as an attorney in an estate proceeding and her representation of a client in a child custody case. The facts were presented to the commission pursuant to a stipulation.

In the estate proceeding, Pederson served as the attorney for the estate. The executor was a beneficiary, together with her two siblings. A Mason City attorney represented the two other beneficiaries. Pederson was aware they were represented parties in the proceeding.

During the probate of the estate, Pederson sought and received the second half of her requested attorney fees prior to filing the final report. She also communicated directly with the two beneficiaries represented by counsel. She wrote a letter to them requesting waiver of the hearing on the final report. Pederson had calculated her attorney fees, as well as

the executor fees, to be each nearly $29,000. Like Pederson, the executor received the second half of her fee prior to the filing of the final report. The district court removed Pederson as the attorney for the executor after it discovered the attorney fees had been miscalculated and the second half of the fees were prematurely received. The district court also removed the executor. The court then ordered Pederson and the executor to return all fees. Pederson, however, did not have sufficient funds at the time to return her attorney fees. She sought and received a loan from the former executor, who then returned all fees previously paid to the executor and Pederson, totaling nearly $58,000, to the estate. Pederson and the executor did not execute a written loan agreement, and Pederson did not advise the executor to seek independent counsel. Furthermore, Pederson did not obtain informed consent from the executor. The district court eventually ordered Pederson to reimburse the executor, which she has not done.

In the child custody proceeding, Pederson agreed to represent the mother of the child who was the subject of the proceedings. Pederson charged and received a flat fee of $1200 in advance of her services. She deposited the fee into her personal account and never provided her client with an itemization of services. After receiving the fee, Pederson filed a petition for temporary and permanent custody on behalf of her client and eventually secured a temporary custody order. The case then sat dormant for close to a year, and Pederson had no contact with her client. The client believed the entire case had been completed. Pederson maintained she only represented the client for the limited purpose of securing an order for temporary custody. Notwithstanding, Pederson did not file and serve a notice of a limited appearance in the case and never informed the court her appearance was limited. The client subsequently

obtained new counsel, and Pederson failed to respond to the new counsel's request for documents and an accounting of services.

For her conduct in the estate proceeding, the Board charged Pederson with violating Iowa Rules of Professional Conduct 32:4.2(a) (communicating with a represented party), 32:1.5(a) (collecting a fee in violation of restrictions imposed by law), and 32:1.8(a) (improperly entering into a business transaction with a client). For her conduct in the child custody proceeding, the Board charged Pederson with violating rules 32:1.15(a) (failing to hold fees in a trust account separate from the lawyer's account), 32:1.15(c) (withdrawing fees from the trust account before earned), 32:1.15(f) (violating court rules governing trust accounts), 32:1.5(b) (failing to communicate the scope of representation with a client), 32:1.2(c) (failing to obtain informed consent to limit the scope of representation), 32:1.4(a) (failing to maintain communication with a client), and 32:1.4(b) (failing to communicate with a client to allow informed decisions about new representation). The commission found Pederson violated the Iowa Rules of Professional Conduct. It recommended the court suspend Pederson's license to practice law for three months.

## II. Scope of Review.

We review attorney disciplinary matters de novo. Iowa Ct. R. 36.21(1) ("Upon submission, the supreme court will proceed to review de novo the record . . . ."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 549 (Iowa 2015). Attorney misconduct must be proven by a convincing preponderance of the evidence. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Haskovec*, 869 N.W.2d 554, 557 (Iowa 2015). Stipulations of fact are binding on the parties. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 651 (Iowa 2013). "We

respectfully consider the commission's findings and recommendations, but they do not bind us." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wheeler*, 824 N.W.2d 505, 509 (Iowa 2012).

### III. Violations.

With respect to the estate matter, the stipulated record establishes that Pederson communicated with represented parties in the estate in violation of rule 32:4.2(a). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 39–40 (Iowa 2011). She had knowledge the two beneficiaries of the estate were represented by counsel and communicated with them by mail to request their signatures on several documents, including a waiver of the final hearing.

Pederson also violated rule 32:1.5(a) by taking the second half of the probate fee prior to the filing of the final report. *See* Iowa Code §§ 633.197, .198 (2013); Iowa Ct. R. 7.2(4); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009). It is well-established that the attorney may not take the second half of a probate fee until the final report has been filed. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 433 (Iowa 2014).

We next consider the charge that Pederson improperly entered into a business transaction with a client. Rule 32:1.8(a) provides that "[a] lawyer shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client unless" the transaction is fair and fully disclosed in writing, the client is given notice and opportunity to seek independent counsel, and the client gives informed consent. Iowa R. Prof'l Conduct 32:1.8(a)(1)–(3). The rule mitigates "the possibility of overreaching" created by an attorney's "legal skill and training, together

with the relationship of trust and confidence between lawyer and client." *Id.* cmt. 1.

Normally, an attorney–client relationship exists between the executor of an estate and the attorney designated by the executor to probate the estate. *See Sabin v. Ackerman*, 846 N.W.2d 835, 842 (Iowa 2014) (citing Restatement (Third) of the Law Governing Lawyers § 14(1)(b), at 125 (Am. Law Inst. 2000) [hereinafter Restatement]). We have previously recognized a breach of professional ethics by an attorney for an estate who also represented his parents in the purchase of a home from the estate and failed to "advise the executors to seek independent counsel." *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 818 (Iowa 2004); *see also Elam v. Hyatt Legal Servs.*, 541 N.E.2d 616, 618 (Ohio 1989) ("In probate, the attorney–client relationship exists between the attorney and the personal representative of the estate." (quoting *In re Estate of Larson*, 694 P.2d 1051, 1054 (Wash. 1985) (en banc))). Thus, we conclude Pederson maintained an attorney–client relationship with the executor in this case, and rule 32:1.8 governing business transactions between an attorney and client applies to the relationship. We proceed to consider if the rule continued to apply once the court removed Pederson as the estate attorney.

The district court removed Pederson as the estate attorney prior to the time the loan agreement was negotiated. We have adopted the approach taken by the Restatement in considering when an attorney–client relationship has ended. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 599 (Iowa 2011) (citing Restatement § 31(2)(e), at 220). "[A] lawyer's actual authority to represent a client ends when . . . the lawyer . . . is ordered by a tribunal to cease representing a client . . . ." Restatement § 31(2)(d), at 220.

Notwithstanding, Pederson does not argue rule 32:1.8 did not apply to the loan transaction because the attorney–client relationship had ended. Furthermore, the stipulated facts make it difficult to determine the precise point in time when the attorney–client relationship terminated. Yet, the discussion about the loan between Pederson and the executor occurred very close in time after the hearing when they were removed from participating in the estate and ordered to return the fees. Pederson continued to exercise influence over the executor at this time, and neither had complied with the court order. These circumstances support a finding that the attorney–client relationship had not ended when the loan was discussed.

Additionally, in *Iowa Supreme Court Board of Professional Ethics & Conduct v. Walters*, we noted the rule of professional conduct governing business transactions with clients can extend to transactions with former clients. 603 N.W.2d 772, 775 (Iowa 1999) (citing Iowa Code of Professional Responsibility for Lawyers DR 5–104(A)). We have found the rule applies whenever "the attorney has influence arising from a previous attorney–client relationship and the client is looking to the attorney to protect the client's interests." *Id.* This approach is also consistent with the approach taken in other states, "even in the absence of an express prohibition in the Rules." *See* Doug Pessefall, *Conflict of Interest - Business Transactions with Former Clients*, 11 Prof. Law., No. 4, Summer 2000, at 17, 18 ("In California, for example, courts will examine the relationship for signs of a 'special trust' that exists after an attorney's representation of a client concludes." (citing *Hunniecutt v. State Bar of Cal.*, 748 P.2d 1161, 1166 (Cal. 1988))); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Moothart*, 860 N.W.2d 598, 609 (Iowa 2015) (applying *Walters* approach to the rule governing sexual relations with clients).

We conclude under these circumstances that rule 32:1.8 applies to the loan agreement. Pederson violated the rule by failing to comply with the requirements for the agreement to be fully disclosed in writing, notice and opportunity to seek independent counsel be provided, and informed consent be obtained.

With respect to the custody case, the record established Pederson violated three subsections of rule 32:1.15 by depositing the flat fee into her office account. *See* Iowa R. Prof'l Conduct 32:1.15(a), (c), (f). A flat fee paid in advance of services must nevertheless be deposited into a trust account and can only be withdrawn as earned. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 192 (Iowa 2015). Pederson violated rule 32:1.15(a) and (c), as well as court rule 45.10, which constituted a violation of rule 32:1.15(f).

Pederson also violated the rule governing the limited scope of representation. Lawyers may limit their scope of representation if the limitation is reasonable under the circumstances and the client gives informed consent. Iowa R. of Prof'l Conduct 32:1.2(c). In this case, Pederson asserted she only agreed to represent her client on the client's claim for temporary custody, not in her claim for primary custody. After the court issued the temporary custody order, the case sat dormant for a considerable period of time, and Pederson and her client had no communication. Her client believed her case had concluded and was subsequently forced to hire a new attorney to finalize the matter. Pederson also failed to respond to requests from the new attorney for documents and an accounting of her fees.

Pederson violated rule 32:1.2(c) by failing to obtain the written, informed consent of her client to the limited representation. *See id.*; *see also id.* r. 32:1.0(e) (defining "informed consent"). Clearly, none of the

exceptions to the writing requirement of the rule apply to the facts of this case. *See id.* r. 32:1.2(c)(1)(i)–(iii) (identifying exceptions to the writing requirement). Pederson also violated rule 32:1.4(a)(4) by failing to respond to the request for information from the new attorney. The rule requires a lawyer to promptly comply with reasonable requests for information. *Id.* r. 32:1.4(a)(4). Requests by the new attorney were reasonable and were ignored by Pederson.

## IV. Sanctions.

In considering the sanction to impose in this case, we begin by looking at the nature of the violations. In the estate proceeding, the misconduct by Pederson involved improperly communicating with a represented party, taking a probate fee before authorized by law, and improperly entering into a business transaction with the executor. The improper communication, however, was limited to a single letter. Additionally, the basis for the fee violation was that the fee was taken before the time permitted by the rule and was not deposited in a trust account. There was no associated claim that Pederson did not have a colorable right to the fee or that the miscalculation of the amount was the result of misrepresentation or fraud. With respect to the improper loan from the executor, Pederson believed the fee matter would be promptly sorted out and resolved and the executor would be promptly paid. The arrangement violated the rule because the proper procedure for a lawyer to enter into such an arrangement was not followed. Furthermore, this conduct was exacerbated by the large sum of money involved.

In the custody proceeding, Pederson followed the same course of action pursued in the estate matter. She took a careless and casual approach to matters that require thoughtful consideration. She failed to

comply with the trust account rules, ignored the rules governing limited representation, and totally mismanaged the essential communication needed between a lawyer and a client. Yet, as with the estate case, there was no claim that she was without a colorable right to a fee. Additionally, there was no claim that she could not have limited her representation in the custody matter if properly communicated and documented.

Our prior cases generally reveal that the violations by Pederson fall within a range of a public reprimand to a suspension. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 544–45 (Iowa 2013) (indicating violations involving the failure to communicate with a client and neglect of a client matter warrant sanctions ranging from a public reprimand to suspension); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 16 (Iowa 2012) (indicating the unauthorized communication with a represented party normally warrants a public reprimand); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690, 699 (2008) (indicating trust account violations involving fees subsequently earned normally warrant a public reprimand, with more severe sanctions when accompanied by aggravating circumstances); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnston*, 732 N.W.2d 448, 456 (Iowa 2007) (indicating sanctions for engaging in improper business transactions of a minor nature fall within a range of a public reprimand to suspension); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Jones*, 606 N.W.2d 5, 9 (Iowa 2000) (imposing two-month suspension for persuading a former client to loan money to a current client); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Smith*, 569 N.W.2d 499, 503 (Iowa 1997) (indicating the taking of an excessive and premature probate fee warranted a thirty-day suspension). In considering the precise

sanction to impose, we also look to the presence of mitigating and aggravating factors. In this case, Pederson had experienced some personal hardships during the relevant time periods. She was also cooperative with the Board throughout the proceedings. On the other hand, Pederson has been publicly reprimanded in the past for conduct similar to the conduct in this case.

Considering all relevant factors, we conclude the conduct engaged in by Pederson in this matter warrants a suspension from the practice of law for a period of sixty days. Most of the individual violations in the case were not serious, but the collective and repetitive nature of her conduct is alarming. Pederson cannot continue to practice law in the future with the cavalier approach to our rules of professional conduct she has followed in the past. A lawyer who engages in a pattern of repeated offenses, even those of minor significance when considered separately, can project indifference to the legal obligations of the profession. Iowa R. Prof'l Conduct 32:8.4 cmt. 2. Lawyers are obligated to thoroughly consider their conduct in relationship to the rules of professional conduct and project the honor and integrity of the profession in the work they perform and in the manner they interact with others.

## V. Conclusion.

We suspend Laurie Jean Pederson's license to practice law in this state for a period of sixty days from the date of the filing of this opinion. This suspension shall apply to all facets of the practice of law. Pederson shall comply with all requirements of the court rules associated with a suspension. *See* Iowa Ct. Rs. 34.23(1)–(4), .24(1)–(2). Pederson shall automatically be reinstated to the practice of law pursuant to rule 34.23(2) the day after the suspension period has expired unless the

Board files an objection indicating the loan Pederson received from the executor of the John Wihlm Estate, Shirley Campbell, has not been paid, or otherwise objects to the reinstatement. The costs of this proceeding are assessed against Pederson. *See id.* r. 36.24(1).

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who concurs in part and dissents in part.

#16–0199, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Pederson*

**WIGGINS, Justice (concurring in part and dissenting in part).**

I agree with the part of the majority decision finding a violation of our rules. However, I dissent as to the sanction for not using the objective criteria of the ABA's *Standards for Imposing Lawyer Sanctions* (1992). *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morse*, 887 N.W.2d 131, 148–52 (Iowa 2016) (Wiggins, J., concurring in part and dissenting in part).