# IN THE SUPREME COURT OF IOWA

No. 17–0254

Filed September 15, 2017

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**RODNEY HOWARD POWELL,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

Grievance commission recommends a suspension of an attorney's license to practice law for violations of ethical rules. **LICENSE SUSPENDED.**

Rodney H. Powell, West Des Moines, pro se.

Tara van Brederode and Amanda K. Robinson, Des Moines, for appellee.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged attorney Rodney Powell with violating the rules of professional conduct pertaining to conflicts of interest with current clients, using information obtained in the course of representation against current clients, and using information obtained in the course of representation against former clients. The Iowa Supreme Court Grievance Commission found Powell violated the rules and recommended a six-month suspension. Upon our de novo review, we find Powell violated the Iowa Rules of Professional Conduct and impose a two-year suspension.

## I. Background Facts and Proceedings.

Rodney Powell is seventy years old. He has been licensed to practice law in Iowa since 1973. His legal background and disciplinary history was last documented in an opinion by this court in 2013. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell* (*Powell II*), 830 N.W.2d 355, 356–57 (Iowa 2013). At that time, we added to his disciplinary history by finding he engaged in a series of trust fund violations over a period of years. *Id.* at 357–58. The violations primarily involved the premature withdrawal of attorney fees from his trust account. *Id.* at 357. We imposed an interim suspension from the practice of law for seven months followed by an additional suspension of three months. *Id.* at 356, 359–60. Powell had been previously suspended from the practice of law in 2007 for six months after he engaged in a series of unethical actions over a period of time involving the collection of attorney fees. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell* (*Powell I*), 726 N.W.2d 397, 408 (Iowa 2007). Powell was also privately admonished in 2005 for charging an excessive fee in a case and was privately admonished in

2010 "for failing to make an accounting before withdrawing fees from his trust account." *Powell II*, 830 N.W.2d at 356.

In this disciplinary action, Powell is accused of obtaining a $20,000 loan from the administrator of an estate during the time he served as the designated attorney for the estate in violation of the rules of professional conduct. The administrator was the beneficiary of a $40,000 life insurance policy on the life of the decedent in the estate. The insurance company paid the insurance proceeds to Powell, and he deposited them in his law firm trust account. At the request of Powell, the administrator orally agreed to loan Powell $20,000 of the proceeds. Powell withdrew the loan proceeds from the trust account before a written loan agreement was executed. The written agreement subsequently prepared by Powell provided for the law firm to repay the loan in monthly installments at ten percent interest. The amount of each monthly payment was to be based on an unspecified amount of firm receipts received during the preceding month. Powell claimed he asked the administrator if he wished to seek independent counsel before agreeing to make the loan. The administrator denied any request was made.

Powell subsequently made sporadic and minimal monthly payments. The administrator eventually filed a breach-of-contract action. Powell settled the lawsuit by agreeing to pay $25,000 to the administrator in monthly installments of $1500.

The Board charged Powell with violating Iowa Rules of Professional Conduct 32:1.8(a) (improperly entering into a business transaction with a client), 32:1.8(b) (using information relating to representation of a client to the disadvantage of the client), and 32:1.9(c) (using information relating to the representation of a former client to the disadvantage of the

former client). The commission found Powell violated Iowa Rules of Professional Conduct 32:1.8(a), 1.8(b), and 1.9(c). It recommended that Powell's license to practice law be suspended for six months. It also recommended Powell reimburse the administrator's travel costs to testify at the hearing.

## II. Violations.

"A client has a right to expect loyalty and independent judgment from an attorney." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnston*, 732 N.W.2d 448, 455 (Iowa 2007); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Fay*, 619 N.W.2d 321, 326 (Iowa 2000) ("A person who seeks legal advice must be able to 'expect unfettered independence of professional judgment of a lawyer whose loyalty to that person is total.'" (quoting *Comm. on Prof'l Ethics & Conduct v. Oehler*, 350 N.W.2d 195, 199 (Iowa 1984))). This concept is crucial to the client–lawyer relationship, and thus, it rightfully pervades our rules on conflicts of interest with clients and the duties owed to them. *See* Iowa Rs. Prof'l Conduct 32:1.8–.9.

"While rule 32:1.8(a) does not prohibit business dealings between a lawyer and his or her client, it imposes stringent requirements on such a transaction." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 814 N.W.2d 532, 538 (Iowa 2012). Of particular importance, the rule "requires that the client . . . be advised, in writing, of the desirability of seeking the advice of independent legal counsel," and "that the client be given a reasonable opportunity to obtain such advice." Iowa R. Prof'l Conduct 32:1.8 cmt. 2. These requirements "mitigate[] 'the possibility of overreaching' created by an attorney's 'legal skill and training, together with the relationship of trust and confidence between lawyer and client.'" *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Pederson*, 887 N.W.2d

387, 391–92 (Iowa 2016) (quoting Iowa R. Prof'l Conduct 32:1.8 cmt. 1). In other words, the rule not only discourages fraudulent activity by attorneys, *see, e.g., Comm. on Prof'l Ethics & Conduct v. Yates*, 420 N.W.2d 455, 457–58 (Iowa 1988) (noting attorney failed to advise clients to seek other legal counsel and then successfully converted client funds), but also helps to ensure well-meaning attorneys do not inadvertently cause serious harm to their clients, *see, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 840 N.W.2d 295, 301–02 (Iowa 2013) (concluding attorney violated rule requiring disclosures despite attorney's belief he was securing a good investment for his clients). Thus, the rule serves to protect confidence in the attorney–client relationship. To effect this purpose, it "must be rigidly followed by our bar, and [it] is strictly enforced." *Fay*, 619 N.W.2d at 325 (applying predecessor to rule 32:1.8).

Powell initially argued he was not subject to the rule because the administrator was not his client. He claimed he represented the estate, not the fiduciary. However, as we have recently held, and as Powell subsequently acknowledged, an attorney representing an estate can owe ethical duties to the estate's fiduciary, particularly if the fiduciary sought out the lawyer's services. *Pederson*, 887 N.W.2d at 392 ("Normally, an attorney–client relationship exists between the executor of an estate and the attorney designated by the executor to probate the estate.").

The parties do not dispute that a loan is a business transaction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wintroub*, 745 N.W.2d 469, 474–75 (Iowa 2008). The rule prohibits business transactions with clients, such as a loan, unless

> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;

(2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

(3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

Iowa R. Prof'l Conduct 32:1.8(a)(1)–(3). In short, the rule requires (1) fair terms that are fully disclosed, (2) advice on independent counsel and the opportunity to obtain it, and (3) informed consent. These requirements must each be evidenced in writing.

We agree with the findings of the commission that Powell violated the rule. The terms of the agreement were not fair or fully disclosed and the critical requirements to enter into the transaction were ignored, including the duty of documentation. As a result, we find it unnecessary to consider the companion violations alleged by the Board. Instead, we turn to sanctions.

### III. Sanctions.

"Because 'we strive to achieve consistency in the discipline of Iowa lawyers who violate our rules of professional conduct,' our prior cases are relevant in our determination of the appropriate sanction." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah*, 890 N.W.2d 647, 651 (Iowa 2017) (quoting *Powell II*, 830 N.W.2d at 358). Powell ignored the rules governing conflicts of interest with a client. Our sanctions for similar conduct have ranged from a public reprimand, *see Marks*, 814 N.W.2d at 542, to revocation, *see Comm. on Prof'l Ethics & Conduct v. Hall*, 463 N.W.2d 30, 36 (Iowa 1990). However, we have typically only used reprimands in this context if the attorney had already served a time of suspension for the underlying conduct. *See Marks*, 814 N.W.2d at 542; *Wintroub*, 745 N.W.2d at 477. On the other end of the spectrum, we

typically reserve revocation in this context for only the most serious violations, such as when the attorney actually converted the client's property. *See Hall*, 463 N.W.2d at 36; *Yates*, 420 N.W.2d at 458. Thus, suspensions for violating the conflict-of-interest rules ordinarily range from one month, *see Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kaiser*, 736 N.W.2d 544, 546 (Iowa 2007); *Fay*, 619 N.W.2d at 327, to one year, *see Wright*, 840 N.W.2d at 304. We have recently imposed sixty-day suspensions for violating our conflicts rules. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 658 (Iowa 2017); *Pederson*, 887 N.W.2d at 395. In one of these cases, like here, the attorney obtained a loan from the client without complying with the rules governing business transactions. *See Pederson*, 887 N.W.2d at 393. In another case involving a loan from a client, we noted we would have required a three- to six-month suspension but for the fact the attorney already served a suspension for the underlying conduct. *See Wintroub*, 745 N.W.2d at 477.

Notwithstanding, we are confronted with a significant aggravating factor in this case. In addition to client harm, the pattern of unethical conduct by Powell over the last decade raises a serious and fundamental question of his fitness to practice law. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129, 139 (Iowa 2004). We begin to lose hope that lawyers will ever understand and meet their ethical obligations when they repeatedly engage in unethical conduct. *Id.* At some point, public protection and the reputation of the profession justify the revocation of a license to practice law. Powell is approaching this point. He continues to fail to honor the ethical boundaries of the profession. However, we have not adopted a three-strikes approach to revocation. The current discipline will be the third for Powell, but it

involves a single incident. Unlike in *Beckman*, we are not faced with a new series of unethical conduct that justifies losing hope that he could practice law in an ethical manner again. *Cf. id.* His background of discipline justifies a sanction greater than recommended by the commission, but not revocation.

Considering all relevant factors, we suspend Powell's license to practice law with no possibility of reinstatement for two years from the date of this opinion.

## IV. Conclusion.

We suspend Rodney Powell's license to practice law in this state with no possibility of reinstatement for a period of two years from the date of the filing of this opinion. This suspension shall apply to all facets of the practice of law. *See* Iowa Ct. R. 34.23(3). Powell shall comply with all requirements of the court rules associated with a suspension. *See id.* rs. 34.23(1)–(4), .24(1)–(2). Upon any application for reinstatement, Powell shall have the burden to show he has not practiced law during the period of suspension and that he meets the requirements of Iowa Court Rule 34.25. He shall also establish he satisfied or discharged the settlement of the lawsuit brought by the administrator. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lynch*, ___ N.W.2d ___ (Iowa 2017). The costs of this proceeding, including the administrator's mileage costs of $1251 to attend the commission hearing as a witness, are assessed against Powell. *See* Iowa Ct. R. 36.24(1); *see also* Iowa Code § 625.2 (2017).

**LICENSE SUSPENDED.**

All justices concur except Wiggins, J., who dissents.

#17–0254, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*

**WIGGINS, Justice (dissenting).**

I once again dissent to any sanction short of revocation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell* (*Powell II*), 830 N.W.2d 355, 360–64 (Iowa 2013) (Wiggins, J., dissenting) (calling for the revocation of Powell's license). For the last twelve years, Powell has managed to use his clients' funds contrary to our ethical rules. His extensive disciplinary history is as follows.

In 2005, Powell received a private admonition for charging an excessive fee to a client.[1] *Powell II*, 830 N.W.2d at 356 (majority opinion). In 2007, we suspended Powell's license to practice law for six months because of his numerous and persistent unethical actions involving the collection of fees from clients. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell* (*Powell I*), 726 N.W.2d 397, 408 (Iowa 2007). In 2010, Powell received another private admonition for failing to make an accounting before withdrawing fees from his trust account. *Powell II*, 830 N.W.2d at 356. In 2011, we temporarily suspended Powell from practicing law for seven months and appointed a trustee to take control of his trust account in response to his various trust violations. *Id.* at 356, 359–60. At the time, the trustee determined his trust account was short approximately $43,000. *Id.* at 356. In 2013, we imposed a three-month suspension for the same trust account violations that led to his interim suspension in 2011. *Id.* at 359–60.

Within nine months of his most recent reinstatement, Powell once again flouted our rules of professional conduct. It is apparent to me that

---

[1]"While a prior private admonition is not discipline, we consider it an aggravating factor" in a subsequent disciplinary case. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. West*, ___ N.W.2d ___, ___ (Iowa 2017).

Powell's practice of law does not generate enough income to support his practice or his lifestyle. This case is similar to *Iowa Supreme Court Board of Professional Ethics & Conduct v. Beckman*, 674 N.W.2d 129 (Iowa 2004). There, we said,

> Based on the serious and repetitive nature of Beckman's ethical violations, we think he is not fit to practice law. For the same reason, we harbor no hope that he will understand and meet his ethical responsibilities in the future. Therefore, the only way in which the public can be protected is by revocation of his license. This sanction is necessary, not only to protect the public, but also to protect the reputation of the bar as a whole.

*Id.* at 139 (citations omitted).

Here, Powell found a way to use his clients' assets for personal gain. Although he did not convert his clients' funds, his unethical conduct allowed him to gain access over the funds. This conduct is similar to the conduct for which we previously disciplined him. Despite the fact that Powell already received discipline, he has continued in his unethical behavior. I am convinced that mere suspension is not enough to deter Powell from committing further questionable conduct.

We revoke an attorney's license based on the nature and severity of the attorney's conduct. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Green*, 888 N.W.2d 398, 405 (Iowa 2016) (revoking the license of an attorney with no prior violations who misappropriated client funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crum*, 861 N.W.2d 595, 606 (Iowa 2015) (theft of client funds). Revocation is almost axiomatic when an attorney converts a client's funds. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 844 N.W.2d 111, 117 (Iowa 2014). I am not advocating a three-strike-and-you-are-out rule. However, Powell's conduct, the similarities to his previous violations, and the repetitive nature of his

ethical violations, lead me to conclude he is not fit to practice law. Most important to me is that all of Powell's violations demonstrate his recurrent improper use of client funds to sustain his law practice. Although he did not outright convert his clients' funds, he found a way on three separate occasions to access these funds unethically. Furthermore, he appears not to have learned anything from his prior disciplinary proceedings. For the protection of the public, and the integrity of the bar, I would revoke his license.