# In the Iowa Supreme Court

No. 25–1244

Submitted January 20, 2026—Filed March 20, 2026

**Iowa Supreme Court Attorney Disciplinary Board,**

Appellee,

vs.

**Valerie A. Cramer,**

Appellant.

On appeal from the report of the Iowa Supreme Court Grievance Commission.

An attorney appeals the recommendation of the grievance commission to revoke her license. **License Suspended.**

Christensen, C.J., delivered the opinion of the court, in which all justices joined.

Alexis W. Grove (argued), Tara van Brederode, and Sarah C. Tupper, for complainant.

David L. Brown (argued) of Hansen, McClintock & Riley, Des Moines, for respondent.

**Christensen, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board charged an Iowa attorney with violations of the Iowa Rules of Professional Conduct. The Iowa Supreme Court Grievance Commission determined that the attorney committed various violations of our ethics rules and recommended revocation of her license. Upon a de novo review of the record, we conclude that the attorney has violated our ethical rules and suspend her license for two years.

### I. Background Facts and Proceedings.

Valerie Cramer was admitted to practice law in Iowa on September 15, 2003. Prior to her admission to the bar, Cramer received her law degree from Northern Illinois University College of Law. She runs a solo law practice, Cramer Law Firm, in Dallas County. On her firm website, she claims to have a "Certificate as a Certified Public Accountant."[1] *About Us*, Cramer Law Firm, https://www.cramerlawplc.com/about-us [https://perma.cc/M5CK-8QU2] (last visited Mar. 13, 2026). Cramer specializes in representing clients in tax, probate, and real estate matters. This case involves multiple ethical violations involving her representations of the Estate of Gregory Crooks and the Estate of Roxanne Davis.

The Board filed a four-count complaint against Cramer, alleging violations of our rules of professional ethics in multiple matters. The grievance commission held a four-day hearing on the Board's allegations, found that Cramer had committed multiple violations, and recommended her license be revoked.

**A. The Waste Case.** Gregory Crooks was being sued for waste (the Waste Case) by his ex-wife, Tracy Craig. After Crooks passed away in

---

[1]At Cramer's disciplinary hearing, Cramer denied that she was a licensed certified public accountant and insisted that she had never held herself out as such.

October 2021, his estate was substituted as the defendant in the Waste Case. Cramer represented the estate in probate and entered a limited appearance on the estate's behalf.

In February 2022, Cramer filed a trial scheduling and discovery plan. The plan stipulated that the parties had a seven-day deadline to file their objections to the other parties' exhibits. The clock started ticking when Craig filed her exhibit list on May 17. Cramer filed her objections on May 26, two days after the deadline. At the hearing, Cramer said, "I told my secretary to do it. I laid it out for her. She was sick that day. She just went home early and didn't do it. That's what happened." The trial court found that Cramer lacked good cause for the delay, and her objections to Craig's exhibit list were waived.

The case proceeded to a two-day bench trial in June before Judge David Porter. Prior to trial, the parties discussed off-the-record potential evidentiary issues relating to the fact that Crooks was deceased and thus unavailable to testify. While Cramer disputes the existence of this off-the-record discussion, its existence was supported by the testimony of the presiding Judge Porter and opposing counsel, Jason Walke.

Cramer experienced ongoing difficulty admitting exhibits and responding to routine evidentiary objections. For example, she attempted to introduce Exhibit L, which drew an objection for lack of foundation. The court instructed Cramer on the questions necessary to lay a proper foundation for the exhibit. Rather than attempting to do so, she abandoned the effort to admit the exhibit and withdrew it entirely. On another occasion, Cramer responded to a lack of foundation objection by invoking the business record exception to the hearsay rules, even after the district court granted Cramer additional time for her to formulate a response to the objection.

At times, Cramer's difficulty with exhibits reflected issues beyond unfamiliarity with the Iowa Rules of Evidence, including a lack of basic trial preparation. Specifically, when Cramer attempted to introduce Exhibit J, the plaintiff objected, stating, "[Y]ou may be having the same problem with Exhibit J that I have, and that is that I've never gotten an Exhibit J." Cramer responded, "Okay. I'll just move on. You're right. I think my secretary did say she forgot to put that in there. I'll move on."

The record shows that Cramer failed to disclose witnesses as required by the discovery plan, a failure she attributed at trial to a misunderstanding of the plan's applicability. Judge Porter excluded the testimony, but allowed limited direct examination for error preservation purposes. Cramer later asserted in an interlocutory appeal that Judge Porter "disallowed competent evidence and ruined the defense of the waste case."

After trial, the court entered judgment against the Crooks Estate for $36,672.11 in compensatory damages, totaling $110,016.33 once treble damages were applied. At the disciplinary proceedings, Julie Crooks, the estate's administrator, testified that Cramer had not advised her of the possibility that treble damages could be imposed, and the administrator was surprised when they were. Cramer likewise testified she was unaware that treble damages could be imposed.

**B. The Crooks Estate.** On December 2, 2022, Cramer filed an attorney fee application and motion for extraordinary fees for her efforts in representing the Crooks Estate, requesting a total of $35,526.85.

According to the billing statement attached to Cramer's request for attorney fees, she spent excessive time on numerous tasks, double-billed for some tasks, and billed for some tasks she never completed. Cramer repeatedly

billed incommensurate amounts of time for the filing of routine forms, some of which were Iowa State Bar Association model forms. In one instance, Cramer billed nearly half an hour to read a single-sentence appearance. In the Waste Case, Cramer billed 4.25 hours to prepare a posttrial brief that would never be filed and an additional 3.95 hours to prepare a proposed findings of fact, but the only difference between the documents was the caption. She billed 1.25 hours to "[p]repare for and attend Trial Scheduling Conference" that she did not attend. At the hearing, Judge Katie Ranes referred to Cramer's billing practices as "nearly being predatory."

Cramer's motion for extraordinary fees was resisted by opposing counsel, Walke, and a hearing was set before Judge Ranes. After filing the motion but before the hearing, Cramer filed an affidavit executed by the estate's administrator. The affidavit was dated October 25, 2021, and notarized by Cramer. This was the same date the estate was opened in probate. The affidavit contained multiple line items for work performed *after* execution of the affidavit.

On February 20, 2023, Judge Ranes issued a written ruling regarding Cramer's request for extraordinary fees. One portion of the ruling read:

> Ms. Cramer's filings in this matter are extremely troubling, and the Court finds that Ms. Cramer's claims related to the funds held by her law firm in regards to this estate lack nearly any credibility. The Court does not make this finding lightly or accuse counsel of misconduct without good cause.

Cramer's request for extraordinary fees was denied.

In response to Judge Ranes's ruling and on behalf of the Crooks Estate, Cramer filed an application for interlocutory appeal before this court. Cramer's proof brief contained twenty-one argument sections, with many arguments being only a couple of sentences. Her proof brief contained allegations that "the court reporter was probably afraid of losing her job so she did not do her job" and

implied that Judge Porter and Judge Ranes tampered with transcripts in the proceedings over which they presided. Cramer's brief also alleged that Judge Porter "raged" and "screamed" at her. Her brief also cited the Massachusetts Constitution as controlling legal authority.

After the supreme court granted Cramer several opportunities to amend her brief, the appeal was dismissed after her fourth brief was struck for its lack of compliance with the rules of appellate procedure. Specifically, we ruled Cramer's brief was not compliant with our rules regarding proper citations to the record and argument sections, points we had raised when we struck her three other proof briefs. Iowa Rs. App. P. 6.903(2)(*g*)(1)–(3), 6.904(4) (2023). We also noted the enumerated violations were "not intended as an exhaustive list," and we pointed to the lack of citations in many portions of the brief, the inclusion of personal opinion and subjective commentary, and the lack of relationship between the standard of review and the arguments raised. We further noted that "some argument sections lack arguments." In answer to one of the Board's interrogatories, Cramer stated, "My appeal was rejected because no other judge wants to admit or allow in the record what happened to me. There is a code of silence." Cramer never acknowledged that any aspect of her representation of the Crooks Estate was improper.

**C. The Davis Estate.** In a different case, eighteen-year-old Selena Davis hired Cramer to represent the estate of her grandmother and adoptive mother, Roxanne Davis. Upon her grandmother's death, Selena had also been named guardian to her two younger brothers, aged ten and fifteen. As part of the representation, Cramer requested to convert the estate to a "small estate."[2]

---

[2]Typically, an attorney representing an estate in probate earns a percentage of the estate as their compensation. Iowa Code § 633.197 (2023). However, in the case of estates with limited resources in probate, a percentage of the estate is often inadequate to compensate an attorney

On March 15, Cramer filed applications for Selena's administrator fees totaling $7,800 and for an order approving her own attorney fees totaling $9,816.25. Cramer filed three signed receipts and waivers,[3] but these receipts and waivers mentioned documents that had not yet been drafted or filed, according to the docket. On March 28, Cramer withdrew the application for administrator fees because the cost of extra attorney fees, in combination with other fees, would create a negative balance in the estate's account.

Judge Ranes set the matter for hearing and appointed attorney Sarah Dewein to represent the interests of Selena's minor siblings. Dewein became concerned about Cramer's billing practices and noticed that the waivers Cramer attached were identical to the previous waivers. Cramer denied recycling the waivers and claimed to have obtained new waivers. Later the same day, Cramer emailed Dewein, stating, "For each filing we have the heirs sign. It is wrong for you to accuse me of that."

In Cramer's fee request, she again billed excessive time for tasks, double-billed, and billed for tasks she did not perform. At the hearing, Judge Ranes noted that "this hearing isn't concluded, and you've billed 1.9 hours to this estate for it, so I mean …" Cramer also billed almost three hours to "[p]repare docs to request reimbursement for administrator expenses and hearing" but never requested a hearing, and a hearing never occurred. Cramer billed 2.55 hours to "[p]repare and file motion for hearing" that was hardly two pages

---

for their services. In such cases, the estate is often converted to a "small estate," whereby an attorney's compensation is dictated by a fee agreement, as opposed to a percentage of the financial resources in probate. *Id.* § 635.8(4).

[3]To expedite the probate process, attorneys will often obtain and submit to the probate court receipts and waivers signed by interested parties. *See, e.g.*, Iowa Code §§ 633.44 (waiver of notice), .173 (waiver of bond by distributees), .470 (waiver of accounting). In an email, Cramer correctly stated that waivers are "used for heirs to waive specific things" and "never used over and over."

long and mostly consisted of boilerplate language. In response to Judge Ranes's concern, Cramer said, "Your Honor, we can go to appeals." Judge Ranes informed Cramer that she had not issued a ruling yet, so there was nothing to appeal.

Before an order was filed regarding Cramer's fee request, she filed a notice of appeal. At that time, Maureen Cosgrove, Selena's new attorney, resisted the filing, noting that there was not yet an order to appeal and that Selena did not authorize an appeal. The resistance was treated as a voluntary dismissal, and the appeal was dismissed. At this point, it was clear that Selena was being represented by new counsel, but Cramer continued to resist Selena's efforts to remove her as counsel. After the dismissal of her appeal, Cramer filed a petition for a writ of certiorari making the same arguments. The petition was summarily denied.

On August 15, 2024, two weeks after Cramer filed her answer to the grievance commission's complaint, she filed a small claims action against Selena for $1,000. When questioned by Cosgrove, Cramer replied that she was "dismissing this" and that "somehow it was a mistake." Cramer never acknowledged that any aspect of her representation of the Davis Estate was improper.

**D. Audit of Cramer's CTA account.** Cramer failed an audit initiated by the Client Security Commission. The audit concluded that Cramer had commingled her own funds with client funds, was not properly maintaining a receipt and disbursement journal, was not properly maintaining client subaccount ledger records, was not performing and maintaining monthly triple reconciliations, and was not retaining accurate records for electronic transfers from the CTA. Cramer does not contest these violations.

**II. Analysis.**

"We conduct a de novo review of attorney disciplinary cases." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Beauvais*, 948 N.W.2d 505, 512 (Iowa 2020). "While we respectfully consider the findings of the grievance commission, we aren't bound by them." *Id.* In attorney disciplinary cases, as in every other case, we avoid deciding constitutional issues unless necessary. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Neff,* 5 N.W.3d 296, 303 (Iowa 2024) (collecting cases). While Cramer alleges multiple procedural errors with the proceedings before the grievance commission, we apply harmless error analysis under Iowa Court Rule 36.23, which provides that "[a]n omission, irregularity, or other defect in procedure will not render void or ineffective any act of the grievance commission, division, or any member thereof unless substantial prejudice is shown to have resulted." The risk of substantial prejudice is severely mitigated by our de novo review of the record.

**A. Judge Ranes's Prior Service on the Grievance Commission Did Not Affect the Proceedings.** Cramer argues that the grievance commission failed to acknowledge and consider the entirety of the circumstances surrounding Cramer's misconduct. She alleges that this failure violated her constitutional right to a fair trial before a neutral tribunal as dictated by the Fourteenth Amendment to the United States Constitution and article I, section 9 of the Iowa Constitution.

Cramer argues that Judge Ranes's service as a former member of the commission and as the party who brought Cramer's current misconduct to the Board constituted a conflict that compromised the fairness of the proceedings. We do not find this to be a conflict. Judge Ranes's term on the commission expired on June 30, 2023. The Board did not file its complaint until July 29,

2024. Judge Ranes was not involved in the adjudication of this matter beyond the submission of complaints regarding Cramer's conduct and testified only as a firsthand witness to her misconduct. The commission has 105 members, and they sit in panels of five. Judge Ranes was neither on the commission nor the panel.

If this were a conflict, a sitting judge with prior service on the commission would never be allowed to testify in an attorney disciplinary proceeding, even if the judge had firsthand knowledge of an alleged ethical violation. This does not make sense and would deprive the commission of reliable testimony in pending complaints.

**B. The Board Did Not Fail to Disclose Relevant Information.** Cramer argues that she was never served the first complaint submitted by Judge Ranes, and this constituted a discovery violation that compromised the fairness of the procedures and was a *Brady* violation. Iowa R. Civ. P. 1.501(1); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

We review discovery rulings for abuse of discretion. *Vaccaro v. Polk County*, 983 N.W.2d 54, 57 (Iowa 2022). Error in the administration of discovery rules is not reversible absent a demonstration that the substantial rights of a party were prejudiced. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 140 (Iowa 2013) ("It is well-settled that nonprejudicial error is never ground for reversal on appeal."). Prejudice is not presumed based on an erroneous discovery ruling. *Id.* We need not decide whether the Board failed in its discovery obligations because Cramer has made no showing of prejudice. Therefore, the alleged discovery violations are harmless error.

To prove a *Brady* violation in a disciplinary proceeding, Cramer would have to show that "(1) the board suppressed the requested evidence, (2) the evidence

was favorable to [Cramer], and (3) the evidence was material to whether he was guilty of the ethical charges." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McGrath*, 713 N.W.2d 682, 689 (Iowa 2006). As an initial matter, we have never determined that *Brady* applies in an attorney disciplinary proceeding. *Id.* ("We need not determine, for purposes of the case before us, the precise extent of an attorney's right to exculpatory materials.").

We need not decide this question today, either, because Cramer has not attempted to make a showing that the Board suppressed requested evidence, the evidence was favorable to her, or the evidence was material to whether she violated the ethical rules as charged. Therefore, Cramer has not met her burden with regard to any potential *Brady* violation.

**C. The Board Did Not Engage in Prosecutorial Misconduct During the Discovery Process.** Cramer claims that the Board's discovery approach exceeded fair limits and overwhelmed her with discovery requests. However, the volume of discovery requests alone does not establish unfairness of a constitutional dimension. The Board's approach was proportionate with the complexity of the case, which included a civil trial, multiple hearings in separate estate matters, multiple appeals, and an investigation by the Board into Cramer's peripheral conduct.

During the discovery process, Cramer never objected to the volume of the requests, depriving the commission of the opportunity to rule on their propriety. Furthermore, Cramer did not request a continuance for additional time to prepare her case. Nor did Cramer pursue a motion to compel after the Board objected to Cramer's requests for production of documents and interrogatories.

In addition, Cramer argues that the volume of discovery requests forced her to waive her right to speedy hearing. But the record reveals she filed her

application for waiver of speedy hearing on August 12, after only the initial service of discovery requests. In this filing, she stated that "no prejudice will result by the waiving of the speedy hearing requirement."

Cramer failed to properly preserve alleged prosecutorial misconduct regarding discovery and has no ruling against which to appeal.

**D. Regardless of the Sufficiency of the Board's Expert Disclosures, Alleged Insufficiency Constitutes Harmless Error.** Cramer claims that the Board's handling of expert disclosures violated Iowa Rule of Civil Procedure 1.500(2)(*c*) and Iowa Rules of Evidence 5.703, 5.704, and 5.705. By failing to provide disclosure of the specific opinions that Judge Porter and Judge Ranes would testify to, Cramer argues she was deprived of a meaningful opportunity to prepare a defense and cross-examine these witnesses. Cramer did not depose either witness.

On our de novo review, we decline to consider any opinion testimony given by Judge Porter and Judge Ranes. Both judges testified primarily as fact witnesses from their firsthand observation of Cramer's misconduct, and any opinion testimony presented before the commission is not necessary for our conclusions regarding Cramer's misconduct and is not relied upon in any manner. Any potential error is harmless.

**E. The Commission's Credibility Determinations Do Not Merit New Proceedings.** Cramer claims that the commission's acceptance of the testimony of Judge Porter and Judge Ranes was one-sided and unfair. We independently review the credibility determinations of the commission and concur with their findings.

The commission testimonies of Judge Porter and Judge Ranes were corroborated by the transcript of the district court proceedings, as well as the

testimony of other attorneys and court reporters involved in the commission proceedings. Judge Porter and Judge Ranes also had no interest in the outcome of the disciplinary proceedings. In contrast, Cramer's testimony lacked credibility due to its scant corroboration and repetition of falsehoods. For example, when Cramer testified to her belief in Judge Ranes's failure to act impartially, she explained, "I don't know why she's not impartial. I just don't think she is impartial." This fell into a pattern of baseless accusations by Cramer and adequately supports the commission's credibility findings.

**F. Cramer's Fifth Amendment Rights Were Not Violated.** Cramer argues that by drawing a negative inference from her invocation of the Fifth Amendment, the commission violated her constitutional rights. Even in criminal cases, mere invocation of the Fifth Amendment right by a defendant does not give rise to constitutional error without an accompanying adverse inference. *See Griffin v. California*, 380 U.S. 609, 613–15 (1965). The commission's findings did not address Cramer's invocation of the Fifth Amendment whatsoever. Likewise, we do not give any adverse inference to Cramer's invocation of the Fifth Amendment.

### III. Ethical Violations.

**A. Misrepresentation.** Iowa Rule of Professional Conduct 32:3.3(a)(1) provides that "A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." False, objectively reckless statements may be subject to discipline based on this rule. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kennedy*, 837 N.W.2d 659, 670 (Iowa 2013). We agree with the commission that Cramer's conduct in the Crooks Estate and Davis Estate violated this rule.

Cramer claims that the Board presented "no evidence of intentional dishonesty or knowing false statements." Evidence of intentional dishonesty or knowing false statements rarely takes the form of direct evidence, and intent is typically proven through circumstantial evidence. *See State v. Manning,* 26 N.W.3d 385, 394 (Iowa 2025). The Board presented circumstantial evidence that indicated Cramer's dishonesty and knowing false statements. The commission found that the Board had sufficiently proven the following instances of dishonesty:

- Cramer claimed that judges and court reporters tampered with transcripts without any factual basis.

- Cramer claimed that her appeal in the Crooks Estate was rejected because "no other judge wants to admit or allow in the record what happened to me" when her appeal was dismissed due to its lack of compliance with the rules of appellate procedure.

- Cramer claimed she spent an hour and a quarter on a hearing she did not attend. Cramer made similar claims regarding several other billing items.

- Cramer claimed that Selena sent her an email requesting her to file an appeal, but Selena testified she never sent such an email—a fact supporting the commission's determination that the email was falsified.

- Cramer falsely claimed that Judge Porter "yelled and screamed" at her, "lied," and was "abusive."

- Cramer claimed that Judge Ranes told Selena to fire Cramer as her counsel.

In addition, the commission found that Cramer held herself out to the public as a certified public accountant (CPA), despite Cramer's testimony that she had never held herself out as such.

Most troubling is Cramer's presentation of a falsified exhibit before the commission. Cramer submitted Exhibit W during proceedings before the commission which purported to be an email from Selena authorizing Cramer to file an appeal after her hearing with Judge Ranes regarding her application for fees in the Davis Estate. No digital forensic analysis of the email was provided by Cramer that could confirm its existence, and Selena testified before the commission that she did not send the email. Like the commission, we find Selena's testimony on this particular point to be more credible than Cramer's testimony, for several reasons.

First, the purported email from Selena is inconsistent with Selena's post-hearing actions, which included hiring a new attorney and filing a resistance. Second, Selena has no interest in the outcome of Cramer's disciplinary proceedings; Cramer does. Third, Cramer's other falsehoods and misrepresentations throughout the disciplinary proceeding, and throughout her representation of the Crooks Estate and Davis Estate, lead us to question Cramer's credibility. Fourth, Cramer provided no explanation or defense of the exhibit during oral argument. After careful review of the circumstances surrounding Exhibit W, we agree with the commission's finding that it was falsified.

We determine that Cramer made multiple statements that were either knowingly false or made with reckless disregard for their truth or falsity, each constituting a violation of our rules.

**B. Statements Regarding Judges.** Iowa Rule of Professional Conduct 32:8.2(a) provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer, or public legal officer."

As set forth above, Cramer made false statements in public appellate filings that judges who issued rulings against her had tampered with transcripts of court proceedings and were otherwise corrupt. Cramer also claimed that the court reporters assisted in altering the transcripts. There is no support in the record to corroborate this besides Cramer's own testimony, and testimony to the contrary was given by Judge Porter, Judge Ranes, attorney Walke, and the two court reporters for the respective proceedings, Erin Weitl and Zoila Chamale.

Cramer's accusations are as inflammatory as they are unsupported. As the commission put it, Cramer asks us to believe "all of these individuals would engage in corruption, risk their livelihoods and reputations, and commit perjury in some global (and apparently concerted) effort to harm Respondent." With no evidence to support her claim, we cannot accept Cramer's accusations as truthful. At the very least, these statements were made with reckless disregard as to their truth or falsity.

The commission determined that Cramer's statements regarding judges and court reporters violated Rule 32:8.2(a). We agree.

**C. Competence.** Iowa Rule of Professional Conduct 32:1.1 requires lawyers to provide "competent representation" to clients. "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." *Id.* To demonstrate a violation of this rule, the record must show that Cramer "did not possess the

requisite legal knowledge and skill to handle the case" or that she "did not make a competent analysis of the factual and legal elements of the matter." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 293 n.2 (Iowa 2011).

Cramer's lack of competence throughout the Waste Case was clear from the record. For example, she failed to anticipate the possibility of treble damages being imposed and failed to appropriately apprise her client of the same, preventing a potential settlement. Cramer showed a troubling lack of familiarity with the rules of evidence and the distinction between cases tried at law and cases tried in equity, a distinction she was still unable to explain during her disciplinary hearing. Cramer missed multiple deadlines, causing the exclusion of witnesses and the waiver of potentially meritorious objections. According to Cramer, the exclusion of evidence "ruined the defense of the [W]aste [C]ase." Cramer did not appeal the decision in the Waste Case, instead waiting until after her attorney fees were threatened to take issue with Judge Porter's decision in our appellate courts, after the deadline for filing a notice of appeal under Iowa Rule of Appellate Procedure 6.101(1)(*b*).

Cramer's deficient conduct throughout her representation in the Waste Case showcased her lack of legal knowledge and trial skills necessary to provide competent counsel in the matter. In addition, she did not take the necessary steps to gain competence. *See, e.g.*, *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Conroy*, 845 N.W.2d 59, 64 (Iowa 2014) (obtaining the assistance of an experienced attorney or familiarizing oneself with the rules of appellate procedure).

The commission found that Cramer "forged ahead in the representation without the knowledge or skill necessary to provide competent representation—and in doing so, violated rule 32:1.1." We agree.

**D. Fee Requests.** Iowa Rule of Professional Conduct 32:1.5(a) states that "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses, or violate any restrictions imposed by law."

As discussed above, the fee requests made by Cramer in the Crooks Estate and Davis Estate were unreasonable. We agree with the commission's finding that they were inflated, duplicative, and represented work that was never conducted. We agree with the commission that Cramer violated rule 32:1.5(a).

**E. Frivolous Appeal.** Iowa Rule of Professional Conduct 32:3.1 states that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous."

Cramer filed her appeal in the Davis Estate prior to the issuance of an order from which to appeal. More concerning, the appeal to recover attorney fees was not authorized by Cramer's client Selena. She persisted in attempting to further the appeal, even after Selena's new counsel filed for dismissal. The commission found that Cramer violated rule 32:3.1. We agree.

**F. Failure to Withdraw.** Iowa Rule of Professional Conduct 32:1.16(a)(3) states that "a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the lawyer is discharged."

Selena hired other attorneys to replace Cramer, but Cramer refused to withdraw, even when faced with a motion to have her dismissed as counsel and even after we recognized that Selena had new counsel when we dismissed Cramer's appeal. Cramer actively fought against her dismissal in an apparent attempt to collect her fees. The commission found that Cramer's conduct in

continuing to try to represent the Davis Estate violated rule 32:1.16(a)(3). We agree.

**G. Client Trust Account.** The commission found that Cramer's accounting practices were a "mess" and in violation of multiple ethical rules concerning the management of client trust accounts. Iowa R. of Prof'l Conduct 32:1.15(a), (f); Iowa Ct. R. 45.1; Iowa Ct. R. 45.2(3)(*a*)(1), (2), (7)–(9). Cramer does not dispute these findings. We agree with the commission's findings.

**IV. Sanction.**

In determining the appropriate sanction, the following factors are to be considered:

> [T]he nature and extent of the respondent's ethical infractions, [her] fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 164 (Iowa 2003).

We are not bound by the commission's recommendations, but we give them respectful consideration. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Capotosto*, 927 N.W.2d 585, 587 (Iowa 2019). After careful examination of the relevant factors, we disagree with the commission's recommendation of revocation and suspend Cramer's license to practice law.

Cramer's lack of disciplinary history is a mitigating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. McGinnis*, 844 N.W.2d 456, 467 (Iowa 2014). The only other mitigating factor supported by the record is Cramer's community service, *see Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 194 (Iowa 2015); however, this is undercut by Cramer "taking advantage of these individuals' lack

of sophistication and knowledge of the legal system," as noted by the commission.

Cramer is not a new practitioner unfamiliar with our ethical rules. Rather, she has practiced law for twenty-two years. Her substantial experience is an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 181 (Iowa 2019).

Cramer has not accepted responsibility for any of her ethical infractions. Her failure to accept responsibility for her conduct is an aggravating factor. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Yang*, 6 N.W.3d 312, 324 (Iowa 2024).

Further, Cramer has continuously attempted to shift blame for her ethical violations to the judiciary, court reporters, her trust account auditor, and even her former client, Selena, by fabricating an email. Blaming others for one's own ethical shortcomings is a familiar refrain in disciplinary cases and hardly represents a new development in our jurisprudence. Its persistence, however, remains disappointing. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Mendez*, 855 N.W.2d 156, 174 (Iowa 2014) (attorney blamed other attorneys and complicated rules for his ethical shortcomings); *Iowa Sup. Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 560 N.W.2d 592, 594 (Iowa 1997) (attorney blamed his office manager for mismanagement of client funds); *Comm. on Prof'l Ethics & Conduct of the Iowa State Bar Ass'n v. Postma*, 430 N.W.2d 387, 389 (Iowa 1988) (en banc) (attorney blamed his secretary for obfuscating his ownership interest in a company he founded). Instead of accepting responsibility, Cramer portrays herself as the victim of a conspiracy bent on denigrating her professional livelihood. As the commission noted, Cramer's "lashing out and blaming others for her own lack of education, training, and experience gives the Commission no

comfort that this would be an isolated incident." We consider this behavior to be an aggravating factor.

"Deceptive testimony by a lawyer is an obvious aggravating factor." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Mbanza*, 996 N.W.2d 711, 723 (Iowa 2023); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 658 (Iowa 2017). Cramer gave deceptive testimony before the commission. In one instance, Cramer claimed she had never held herself out as a CPA, despite advertising herself as having a "Certificate as a Certified Public Accountant" on her firm's website. Furthermore, Cramer's testimony insisted on the authenticity of an exhibit that was demonstrated to be falsified. We find this to be an aggravating factor.

Taking all of this into consideration, we disagree with the commission's recommendation of revocation. Cramer's conduct was unethical and serious; however, revocation is a sanction ordinarily reserved for attorneys who convert client funds for personal use, of which Cramer has not been accused. *See, e.g.*, *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sharpe*, 12 N.W.3d 338, 351–52 (Iowa 2024). "Our primary purpose when imposing sanctions is to protect the public, not to punish the lawyer." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Anderson*, 21 N.W.3d 145, 150 (Iowa 2025) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 669 (Iowa 2017)).

Striving for consistency, we look to our past precedents for guidance on the proper sanction. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Daniels*, 984 N.W.2d 757, 765–66 (Iowa 2023). We have distinguished between actual and theoretical harm in our precedents. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Leitner*, 998 N.W.2d 627, 649 (Iowa 2023). Although the record reflects Cramer's attempts to overbill clients, those efforts were easily detected and unsuccessful.

The evidence does not demonstrate a sophisticated or concealed billing scheme capable of evading detection by the bench or bar.

Cramer's pattern of dishonest conduct throughout this matter "strikes at the baseline of fundamental honesty on which our profession's integrity is built." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 988 N.W.2d 399, 414 (Iowa 2023); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 382 (2007). We have imposed various sanctions on dishonest conduct, and the degree of sanction is "individually crafted based upon the nature of the violation and the mitigating and aggravating circumstances." *McGinnis*, 844 N.W.2d at 466. Notably, Cramer's dishonest conduct was wide-ranging, forming a trail of deception cutting across several layers of our court system, including the commission.

Cramer's falsification of an exhibit before the commission troubles us deeply. This degree of bad faith in a disciplinary proceeding has not been seen by this court in more than three decades, when we decided *Committee on Professional Ethics & Conduct of the Iowa State Bar Association v. Wenger*, 469 N.W.2d 678 (Iowa 1991) (en banc). *Wenger* concerned an attorney who admitted that he had falsely testified and offered a false document at a prior disciplinary hearing. *Id.* at 678. We recognized as mitigating Wenger's reputation and character for honesty, his acceptance of responsibility, and his thirteen years of practice without drawing a disciplinary complaint. *Id.* at 681. We recognized as aggravating Wenger's prior suspension and his failure to cooperate with the disciplinary committee. *Id.* at 680. There, we extended Wenger's suspension for three years. *Id.* at 681. Two judges dissented, arguing for the revocation of Wenger's license. *Id.* (Harris, J., dissenting, joined by Snell, J.).

Cramer's statements regarding judges were baseless and reprehensible, but do not support revocation. This is consistent with our precedent. *See, e.g.*, *Neff*, 5 N.W.3d at 302, 315 (attorney who referred to judges as "bitches" and "limp dick" received a public reprimand); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Widdison*, 960 N.W.2d 79, 92, 98 (Iowa 2021) (attorney who accused a judge of having personal vendetta against them received a ninety-day suspension); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Att'y Doe No. 792*, 878 N.W.2d 189, 192, 202 (Iowa 2016) (attorney who accused a judge over email of making a "pathetic ruling" as part of a "shameless cover up for [his] circle of buddies" received a private admonition). Cramer's repeated accusations of judges and court reporters are on the more serious end of the spectrum because they were an attempt to shift blame away from her own ethical shortcomings, worse than a couple disgruntled remarks after an adverse ruling. Even so, such conduct does not support revocation.

A similar combination of facts was involved in *Iowa Supreme Court Attorney Disciplinary Board v. Leitner*, which concerned an attorney we found to have knowingly made false statements to the court in addition to a series of other ethical violations. 998 N.W.2d at 638. One violation concerned Leitner's submission of misleading emails to the commission as exhibits. *Id.* at 648. These emails implied the Board had reached a settlement agreement with the attorney, when he had in fact rejected the offer. *Id.* Similar to Cramer, the mitigating circumstances in *Leitner* included his lack of disciplinary history and his history of providing legal services to an underserved community. *Id.* at 647 (citing *Said*, 869 N.W.2d at 194; *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Bieber*, 824 N.W.2d 514, 527–28 (Iowa 2012)). Also, like Cramer, aggravating circumstances included his substantial experience as an attorney (forty-four years), his attempts to

mislead the commission, and his failure to take responsibility. *Id.* at 647–48 (citing *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Jacobsma*, 920 N.W.2d 813, 819 (Iowa 2018); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Stowers*, 823 N.W.2d 1, 17 (Iowa 2012); *Rickabaugh*, 728 N.W.2d at 381).

While *Leitner* did not involve false statements regarding the judiciary, there were several other serious ethical violations. In a case where opposing counsel was representing Leitner's former client, Leitner argued that a contract he himself drafted in his former representation was "unconscionable and void as against public policy." *Leitner*, 998 N.W.2d at 640. Leitner also violated a court order that required him to refrain from personally contacting a represented party. *Id.* at 646. There, we rejected the commission's recommendation of revocation and issued a two-year suspension. *Id.* at 649.

On occasion, we have required attorneys who have demonstrated a basic lack of understanding of our ethical rules to pass the Multistate Professional Responsibility Examination as a condition of reinstatement in addition to a suspension. *See, e.g., Iowa Sup. Ct. Att'y Disciplinary Bd. v. Humphrey*, 922 N.W.2d 601, 608 (Iowa 2019); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 704 (Iowa 2008). The record reflects Cramer's lack of familiarity with the duties of competency and candor required by our rules. We therefore impose the additional requirement that Cramer pass the Multistate Professional Responsibility Examination prior to her reinstatement as an attorney.

Upon a de novo review of the record, we find the appropriate sanction for Cramer is to impose a two-year suspension from the practice of law.

**V. Conclusion.**

We suspend Cramer's license to practice law in Iowa for an indefinite period, with no possibility of reinstatement for a minimum period of two years.

The suspension shall be effective ten days from the date of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 34.23(4). Cramer must comply with the notification and other requirements of Iowa Court Rule 34.23(2). In addition to the requirements stated in Iowa Court Rule 34.25, as a condition for her reinstatement, Cramer must pass the Multistate Professional Responsibility Examination. All costs of this proceeding are assessed against her under Iowa Court Rule 36.24(1).

**License Suspended.**